[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 27, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-13740

_____

Agency No. A71-780-581

JOSE ANGEL SARMIENTO CISNEROS,

Petitioner,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Bureau of Immigration and Customs Enforcement

_____

**(August 27, 2004)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This petition for review of an order of the Bureau of Immigration and

Customs Enforcement (BICE) raises an issue that has divided seven of our sister

circuits: the temporal reach of 8 U.S.C. section 1231(a)(5), which both provides for the reinstatement of an order of removal of an alien who has reentered the United States illegally and bars the alien from filing an application for discretionary relief. The resolution of this issue depends on whether Congress clearly expressed its intent that section 1231(a)(5) apply retroactively and, if not, whether section 1231(a)(5) has an impermissible retroactive effect when applied to Jose Angel Sarmiento-Cisneros, an alien who reentered the United States illegally, married an American citizen, and then applied for an adjustment of status before the effective date of the statute. Because section 1231(a)(5) is ambiguous as to its temporal reach, we join the five other circuits that have held that Congress did not clearly express an intent to apply section 1231(a)(5) retroactively. We also hold that section 1231(a)(5) would have an impermissible retroactive effect if applied to Sarmiento. We, therefore, grant Sarmiento's petition for review, vacate the order of the BICE that reinstated Sarmiento's order of removal, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Sarmiento is a native and citizen of Mexico. In May 1990, Sarmiento entered the United States as a non-immigrant tourist with authorization to remain in the United States until May 19, 1990. He remained past May 19, 1990, without

2

authorization. Then, on April 28, 1994, an Immigration Judge found Sarmiento deportable to Mexico. The Immigration Judge issued an order that granted Sarmiento voluntary departure on or before October 28, 1994, with an alternate order of deportation to Mexico. After he failed to comply with the voluntary departure order, Sarmiento was deported to Mexico on October 8, 1996.

On November 25, 1996, Sarmiento illegally reentered the United States. On March 19, 1997, he married Martha Vasquez, a citizen of the United States. On March 27, 1997, Vasquez filed a visa petition for an alien relative on Sarmiento's behalf, and Sarmiento filed with the Immigration and Naturalization Service an application to adjust his status to legal permanent resident. Both the visa petition for an alien relative and the application to adjust status were approved.

On June 1, 1998, Sarmiento's status was adjusted to lawful permanent resident of the United States on a conditional basis. In August 1998, the INS, however, mailed to Sarmiento a letter entitled "notice of intent to rescind adjustment of status." The letter stated that Sarmiento was "statutorily ineligible" to adjust his status on the basis of 8 C.F.R. section 212.2(a), which states that "[a]ny alien who has been deported or removed from the United States is inadmissible to the United States unless the alien has remained outside of the United States for five consecutive years since the date of deportation or removal."

3

The letter also advised Sarmiento that he had thirty days to respond to the notice.

On September 9, 1998, Sarmiento filed a response to the notice of intent to rescind his adjustment of status and an application for permission to reapply for admission after deportation (Form I-212). Sarmiento's Form I-212 application was later approved. Nevertheless, on December 23, 1998, the INS issued a decision rescinding Sarmiento's adjustment of status for failure to respond within thirty days. Sarmiento is contesting the rescission of his adjustment of status, in a separate proceeding.

On March 1, 2003, the administrative, service, and enforcement functions of the INS were transferred from the Department of Justice to the new Department of Homeland Security. See 6 U.S.C. § 251. The BICE, as part of the Department of Homeland Security, assumed the detention, removal, enforcement, and investigative functions of the INS. See 6 U.S.C. § 252; see also 6 U.S.C. § 542.

On June 26, 2003, the BICE issued a notice of intent to reinstate Sarmiento's deportation order in accordance with 8 U.S.C. section 1231(a)(5) enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009-546 (IIRIRA), which requires the reinstatement of an order of removal when the Attorney General has found that an alien has illegally reentered the United States. Four days later, on June 30, 2003, the BICE reinstated

4

Sarmiento's deportation order. On July 24, 2003, the BICE issued a warrant of removal. This petition for review followed.

## II. STANDARD OF REVIEW

We review de novo the interpretation of a statute by the agency that administers it. Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S. Ct. 2778, 2782 (1984). Ordinarily if the statute is ambiguous, we defer to the reasonable interpretation by the agency. Id. "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" INS v. Aguirre-Aguirre, 526 U.S. 415, 425, 119 S. Ct. 1439, 1445 (1999) (quoting INS v. Abudu, 485 U.S. 94, 110, 108 S. Ct. 904, 915 (1988)).

An important variation of this rule applies when the retroactive application of a statute is at issue. No deference is owed to the agency when the ambiguity involves the retroactive application of the statute. A statute that is ambiguous with respect to its retroactive application is construed to be unambiguously prospective. INS v. St. Cyr, 533 U.S. 289, 320 n. 45, 121 S. Ct. 2271, 2290 n. 45 (2001); Landgraf v. USI Film Prods., 511 U.S. 244, 264, 114 S. Ct. 1483, 1496 (1994). For Chevron purposes, there is then no ambiguity for the agency to resolve. St.

Cyr, 533 U.S. at 320 n. 45, 121 S. Ct. at 2290 n. 45.

### III. DISCUSSION

The BICE reinstated Sarmiento's order of removal under the authority of 8 U.S.C. section 1231(a)(5), which provides for the reinstatement of an order of removal as to any alien who has reentered the United States illegally:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). The crux of this appeal is the temporal application of this section.

We analyze the temporal reach of section 1231(a)(5) under the two-step test established in Landgraf. The court first must "determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so . . . there is no need to resort to judicial default rules." Landgraf, 511 U.S. at 280, 114 S. Ct. at 1505. If the statute does not contain an express command as to the temporal reach of the statute, then the court must move to the second step and determine whether the statute would have an impermissible retroactive effect as applied. Id.

6

*A. Is the Temporal Reach of Section 1231(a)(5) Clear?*

The standard for concluding that Congress unambiguously expressed an intent that a statute apply retroactively is demanding. Id. "[C]ases where [the Supreme Court] has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation." Lindh v. Murphy, 521 U.S. 320, 328, n. 4, 117 S. Ct. 2059, 2064, n. 4 (1997). "The presumption against retroactive application of ambiguous statutory provisions, [is] buttressed by 'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'. . . ." St. Cyr, 533 U.S. at 320, 121 S. Ct. at 2290 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S. Ct. 1207, 1222 (1987)).

Several circuit courts have reached differing conclusions about whether Congress clearly expressed its intent regarding the application of section 1231(a)(5) to aliens who reentered the United States before the effective date of the IIRIRA. Two courts, the Ninth and Sixth Circuits, have concluded that Congress clearly intended that section 1231(a)(5) apply only prospectively. Bejjani v. INS, 271 F.3d 670, 676-87 (6th Cir. 2002); Castro-Cortez v. INS, 239 F.3d 1037, 1050-53 (9th Cir. 2001). Five other courts, the First, Third, Fourth, Fifth, and Eighth Circuits, have ruled that Congress did not unambiguously express its intent

7

regarding the temporal scope of section 1231(a)(5). Arevalo v Ashcroft, 344 F.3d 1, 13 (1st Cir. 2003); Avila-Macias v. Ashcroft, 328 F.3d 108, 114 (3d Cir. 2003); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 299 (5th Cir. 2002); Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 865 (8th Cir. 2002); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 108 (4th Cir. 2001). For the reasons that follow, we agree with the majority of circuits that Congress did not unambiguously express its intent.

Although the parties both advance arguments that the intent of Congress regarding the temporal reach of section 1231(a)(5) is clear, they reach opposite conclusions about that supposedly clear intent. The BICE argues that the language of the statute and other provisions of the IIRIRA are plain that Congress intended section 1231(a)(5) to apply retroactively. Conversely, Sarmiento argues that Congress clearly expressed its intent that the statute apply only prospectively. Both arguments fail to persuade.

The argument of the BICE that the inclusion of the language "has reentered" in section 1231(a)(5) in conjunction with the effective date of the statute on April 1, 1997, plainly contemplates application to reentries that occurred before that date fails for two reasons. First, although the language "has reentered" is in the past tense and subject to the interpretation offered by the BICE, it is not clear that it "could sustain only one interpretation." Lindh, 521 U.S. at 328 n. 4., 117 S. Ct. at

8

2064 n. 4. To the contrary, for section 1231(a)(5) to be applicable, an alien must have been deported from the United States and have reentered the United States. Because both deportation and reentry must already have been accomplished, it is unsurprising that Congress used the past tense. The language "has reentered," therefore, is equally consistent with a retroactive or a prospective interpretation of the statute.

Second, this language "does not speak at all to the potential effect of when an application for discretionary relief was filed." Arevalo, 344 F.3d at 12. Section 1231(a)(5) uses the language "has reentered" in connection with an alien who "is not eligible and *may not apply* for any relief." 8 U.S.C. § 1231(a)(5) (emphasis added). Although "has reentered" is in the past tense, the phrases "is not eligible" and "may not apply" are present and prospective. When section 1231(a)(5) became effective, Sarmiento had reentered the United States, but he had already applied for relief. The language of section 1231(a)(5) does not address the viability of Sarmiento's antecedent application.

We also reject the argument of the BICE that, when read in the light of section 309(d)(2) of the IIRIRA, which defines an "order of removal" to include "an order of exclusion and deportation or an order of deportation," Congress clearly required the reinstatement of an order of deportation entered before April 1,

9

1997.  The IIRIRA abolished the distinction between the various types of removal proceedings, and subsumed exclusion and deportation under removal.  See St. Cyr, 533 U.S. at 315, 121 S. Ct. at 2287.  The BICE argues that section 1231(a)(5), when it refers to an "order of removal," applies also to orders of exclusion and orders of deportation, both of which must have been issued before April 1, 1997.  Although the interpretation proposed by the BICE is plausible, the language "order of removal" is equally consistent with the opposite conclusion that Congress intended to apply this section prospectively to the orders of removal entered after the effective date of the Act.

Sarmiento's arguments mirror the three reasons stated by the Ninth Circuit, in support of its decision in Castro-Cortez, that Congress clearly expressed its intent that section 1231(a)(5) only apply prospectively.  First, the court noted that Congress eliminated the retroactivity language from the statute and stated that "Congress's decision to remove the retroactivity language from this part of the statute provides strong support for the conclusion that it did not intend that the revised provision be applied to reentries occurring before the date of the statute's enactment."  Castro-Cortez, 239 F.3d at 1051.  Second, the court concluded, by negative implication, that, because Congress had specified in several other sections of the IIRIRA whether the section would apply retroactively, the failure to provide

10

for retroactive application in section 1231(a)(5) indicated that Congress did not intend for that section to apply retroactively. Id. Third, the court stated that "Congress is deemed to enact legislation with Landgraf's "default rule" in mind. . . . Accordingly, silence provides useful evidence as to intent for the first step of Landgraf's two-part inquiry." Id. at 1052 (internal citation omitted).

These arguments are unpersuasive. First, although the removal of the retroactivity language from the statute lends weight to Sarmiento's argument, the silence with which the retroactivity language was replaced does not come close to being a clear statement of congressional intent. See Landgraf, 511 U.S. at 262-63, 114 S. Ct. at 1495-96. Another rational explanation for the removal of the language is that Congress believed the language was surplusage.

Second, the argument of negative implication fails to show clear congressional intent. Although as a matter of statutory construction "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," Cardoza-Fonesca, 480 U.S. at 432, 107 S. Ct. at 1213 (citations and internal quotation marks omitted), in the IIRIRA Congress unequivocally provided for prospective application in some sections while in others it clearly provided for retroactive

11

application.  See 8 U.S.C. § 1101(a)(43) ("the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996"); Pub. L. 104-208, § 105(b) ("The amendments made by subsection (a) . . . shall apply to illegal entries or attempts to enter occurring on or after [April 1, 1997].").  "'[T]he sometimes retrospective, sometimes prospective provisions that surround [the statute] unveil[] the Janus-like faces of Congress, but leave[] its mind concealed.'"  Arevalo, 344 F.3d at 13 (quoting Tasios v. Reno, 204 F.3d 544, 549 (4th Cir. 2000)).

Sarmiento's final argument that the silence of Congress is evidence of congressional intent because Congress "is deemed to enact legislation with Landgraf's "default rule" in mind," Castro-Cortez, 239 F.3d at 1052, also fails.  "[I]t could just as easily be argued that Congress remained silent in the expectation that courts would proceed to the second step of the Landgraf analysis, determine whether the provision would have a retroactive effect and, if it did, only then decline to apply it retrospectively."  Avila-Macias, 328 F.3d at 114.  The backdrop of Landgraf, therefore, does not provide us a clear answer to this issue.

We conclude that Congress has not unambiguously expressed its intent regarding the temporal scope of section 1231(a)(5).  This conclusion, however, does not end our analysis.  We proceed to the second step of the Landgraf analysis

12

to determine whether the application of section 1231(a)(5) to aliens who reentered the United States and applied for relief before the effective date of the IIRIRA produces an impermissible retroactive effect.  See St. Cyr. 533 U.S. at 320, 121 S. Ct. at 2290.

*B. Does the Application of Section 1231(a)(5) to Sarmiento*
*Have an Impermissible Retroactive Effect?*

"The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Martin v. Hadix, 527 U.S. 343, 357-58, 119 S. Ct. 1998, 2006 (1999) (quoting Landgraf, 511 U.S. at 270, 114 S. Ct. at 1499).  "A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." St. Cyr, 533 U.S. at 321, 121 S. Ct. at 2290-91 (citation and internal quotation marks omitted).  The "judgment whether a particular statute acts retroactively 'should be informed and guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations."'" Id. (quoting Martin, 527 U.S. at 358, 119 S. Ct. at 2006 (quoting Landgraf, 511 U.S. at 270, 114 S. Ct. at 1499)).

13

In St. Cyr, which involved the retroactive application of a section of the IIRIRA, the Supreme Court held that the elimination of section 212(c) relief by the IIRIRA had an impermissible retroactive effect on St. Cyr and other defendants who had entered plea agreements before the amendment of that section by the IIRIRA. Before the enactment of the IIRIRA, an alien convicted of a controlled substance offense was eligible for a waiver of deportation at the discretion of the Attorney General. The IIRIRA eliminated this discretionary relief. The Supreme Court reasoned that the "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past." Id. at 321, 121 S. Ct. at 2291 (citation and internal quotation marks omitted). The Court explained that before the IIRIRA "aliens like St. Cyr had a significant likelihood of receiving § 212(c) relief. Because respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA [would have had] an obvious and severe retroactive effect." Id. at 325, 121 S. Ct. at 2293.

Under the reasoning of St. Cyr, the application of section 1231(a)(5) to Sarmiento would have an impermissible retroactive effect. Before the IIRIRA, an

14

alien who had been previously deported and illegally reentered the United States was eligible for the discretionary relief of adjustment of status under 8 U.S.C. section 1255(i).  See 8 U.S.C. § 1255(i).  Although the pre-IIRIRA statute empowered the Attorney General to reinstate deportation orders, the authority was limited to a small group of aliens of which Sarmiento was not a member.  See 8 U.S.C. § 1252(f) (repealed 1996).  The IIRIRA eliminated the availability of any relief for an alien who illegally reenters the United States and broadened the applicability of the statute to all aliens.  See 8 U.S.C. 1231(a)(5) ("the alien is not eligible and may not apply for any relief under this chapter").  The IIRIRA, therefore, created a new disability for Sarmiento.

The retroactive application of section 1231(a)(5) would attach this new disability to a completed transaction, because Sarmiento applied for discretionary relief in the form of an adjustment of status before the effective date of the IIRIRA. "[A]pplications for discretionary relief, once made, often become a source of expectation and even reliance." Arevalo, 344 F.3d at 14.  After filing his application, Sarmiento had a reasonable expectation that he would receive a determination of his application from the Attorney General.  Sarmiento was actually granted the relief before it was later rescinded and Sarmiento is contesting that rescission.  The application of section 1231(a)(5) to Sarmiento impaired his

15

right to seek relief because it revoked his eligibility and subjected him to automatic reinstatement of his order of removal.

The BICE erroneously argues that application of the reinstatement section to Sarmiento cannot have a retroactive effect because Sarmiento was deported, reentered the United States, and applied for relief after the date on which the IIRIRA was enacted. The BICE argues that the statute cannot have retroactive effect because Sarmiento was on notice of the change in the law. The problem with this argument is that presumably Sarmiento was also on notice of the *effective* date of the change in the law, and Sarmiento relied on that understanding in applying for relief before the effective date. It is not the date of enactment but the effective date of the IIRIRA that is critical in the determination of the retroactive application of a statute. Cf. St. Cyr, 533 U.S. 289, 121 S. Ct. 2271; Arevalo, 344 F.3d 1; Avila-Macias, 328 F.3d 108.

The BICE also erroneously argues that application of the reinstatement provision to preclude adjustment of status eligibility cannot have an impermissible retroactive effect against Sarmiento because the relief sought was discretionary. The BICE argues that adjustment of status is not a defense to removal and that it is akin to "an act of grace." The BICE concludes that the application of the reinstatement provision to pending applications for adjustment of status cannot

16

have a retroactive effect.

The Supreme Court rejected this reasoning in St. Cyr. The Court explained that we must consider an "alien's reasonable reliance on the continued availability of discretionary relief from deportation when deciding whether the elimination of such relief has a retroactive effect." 533 U.S. at 324, 121 S. Ct. at 2292. "There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." Id. at 325, 121 S. Ct. at 2293. That adjustment of status relief is discretionary does not defeat Sarmiento's argument that section 1231(a)(5) has an impermissible retroactive effect when applied to him. See Arevalo, 344 F.3d at 15.

The opinions of our sister circuits bolster our conclusion that the application of section 1231(a)(5) to Sarmiento has an impermissible retroactive effect. In Arevalo, which involved a petitioner who, like Sarmiento, had been deported, illegally reentered the United States, and then applied for adjustment of status before April 1, 1997, the First Circuit stated that the petitioner's application for adjustment distinguished her "in a material way from the mine run of persons who appeal from the reinstatement of previous removal orders." Arevalo, 344 F.3d at 14. The court added "[t]his is a salient distinction because applications for discretionary relief, once made, often become a source of expectation and even

17

reliance."  Id.

In cases where no impermissible retroactive effect was found, see Avila-Macias, 328 F.3d at 114; Velasquez-Gabriel, 263 F.3d at 110, the petitioners either applied for discretionary relief after the effective date of the IIRIRA or failed to apply for relief entirely.   In Velasquez-Gabriel, the Fourth Circuit held that "Velasquez-Gabriel's failure to apply to adjust his resident status before the new law took effect fatally undermines his contention that § 241(a)(5)'s application to him 'attaches new legal consequences to events *completed* before its enactment.'" 263 F.3d at 110 (quoting St. Cyr, 533 U.S. at 321, 121 S. Ct. at 2290 (emphasis added)).  Similarly, in Avila-Macias, the Third Circuit refused to find a retroactive effect when the petitioner reentered the United States after the effective date of the IIRIRA:

> If he had reentered prior to the effective date of IIRIRA, he could at least plausibly argue that he did so believing (1) that he would be entitled to a hearing at which he could contest the legality of his underlying deportation order and (2) that he would be entitled to apply for discretionary relief.

Avila-Macias, 328 F.3d at 114.

The application of section 1231(a)(5) to Sarmiento would eliminate the relief that Sarmiento sought even though that relief was available to him before the effective date of the IIRIRA.  Attaching this new disability to Sarmiento's

18

application would have an impermissible retroactive effect. We must, therefore, vacate the decision of the BICE, which allowed the reinstatement of the order to deport Sarmiento.

## IV. CONCLUSION

Because we conclude that section 1231(a)(5) is ambiguous as to its temporal reach and the application of section 1231(a)(5) to Sarmiento would have an impermissible retroactive effect, we **GRANT** Sarmiento's petition for review and **VACATE** the decision of the BICE reinstating Sarmiento's order of deportation.

**VACATED** and **REMANDED.**