[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 4, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15866
Non-Argument Calendar
_____

BIA No. A79-030-065

MARIO SOTO-SOSA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

**(November 4, 2005)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Mario Soto-Sosa, through counsel, petitions this Court for review of the order of the Bureau of Immigration and Customs Enforcement ("BICE"), reinstating his prior expedited order of removal, entered pursuant to the Immigration and Nationality Act ("INA") § 241(a)(5), 8 U.S.C. § 1231(a)(5). Soto-Sosa argues on appeal that the BICE erred in issuing this order when Soto-Sosa had pending a petition for a waiver to reapply for reentry, filed pursuant to 8 C.F.R. § 212.2(E). For the reasons set forth more fully below, we affirm.

On February 10, 2001, Soto-Sosa, a native and citizen of Mexico, entered the United States without inspection. After agents with the U.S. Border Patrol detained him, he voluntarily returned to Mexico. On February 11, 2001, Soto-Sosa again entered the United States and, this time, falsely claimed to be a United States citizen. The former Immigration and Naturalization Service ("INS")[1] charged Soto-Sosa with being inadmissible as an alien who falsely represented himself as a United States citizen to gain admission into the United States, pursuant to INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii), and it ordered him removed that

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub.L. No. 107-296, 116 Stat. 2135. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. See 6 U.S.C. § 251. The BICE, as part of the DHS, assumed the detention, removal, enforcement, and investigative functions of the INS. See 6 U.S.C. § 252. However, because this case was initiated while the INS still was in existence, we will refer to both the former INS and the BICE.

same day pursuant to the expedited removal provisions in INA § 235(b)(1), 8

U.S.C. § 1225(b)(1)(A)(i).[2]

At the time of Soto-Sosa's removal, the INS also served him with notice that

he was prohibited from entering, attempting to enter, or being in the United States

for a period of five years from the date of his removal. However, Soto-Sosa

concedes on appeal that, during the same month that he was removed, he reentered

the United States without inspection. In July 2002, Soto's wife, who was a U.S.

citizen, filed a visa petition on his behalf. Also in July 2002, Soto-Sosa filed an

application for adjustment of status, pursuant to INA § 245(a); 8 U.S.C. § 1255(a).

Moreover, in October 2003, in support of this application for adjustment of status,

Soto-Sosa filed a petition for permission to reapply for admission, pursuant to 8

C.F.R. § 212.2(E).[3]

On October 19, 2004, when Soto-Sosa appeared for his interview to

determine adjustment of status, Citizen and Immigration Services ("CIS")

_____

[2] Section 1225(b)(1)(A)(i) provides, in relevant part, that, "if an immigration officer determines that an alien . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) or this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under Section 1158 of this title or a fear of persecution." See 8 U.S.C. § 1225(b)(1)(A)(i).

[3] Soto-Sosa filed this application because, although an alien previously removed from the United States under the expedited removal proceedings remains inadmissible for a period of five years, under some circumstances, he can circumvent this rule by gaining the consent of the U.S. Attorney General. See INA § 212(a)(9)(A)(i) and (iii), 8 U.S.C. § 1182(a)(9)(A)(i) and (iii). Although this application is only in the record excerpts, and, thus, is not part of the record on appeal, the government concedes that Soto-Sosa filed it.

3

approved his visa petition. The CIS, however, denied his application for adjustment of status because he was inadmissible for a period of five years. That same day, Soto-Sosa was taken into custody and the BICE served him with a "Notice of Intent/Decision to Reinstate Prior Order," pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). Soto-Sosa responded that he did not wish to make a statement contesting this determination. On October 20, 2004, the BICE reinstated Soto-Sosa's prior removal order without conducting a hearing.

Soto-Sosa then filed a timely petition for review of this order in this Court. Prior to the parties filing their briefs, we directed them to address the following jurisdictional questions: (1) "What law governs judicial review in this petition for review"; (2) "[i]f the permanent rules govern . . . [i]f petitioner seeks judicial review of the denial of discretionary relief, does INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B) preclude this Court's jurisdiction if the BIA did not exercise any discretion in denying the requested relief"; and (3) "whether the October 19, 2004, order is a final order of removal subject to judicial review."[4] After Soto-

---

[4] To the extent we questioned whether the permanent or the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"), govern this petition for review, Soto-Sosa's immigration proceedings commenced after April 1, 1997. Thus, the permanent provisions of the INA, as amended by the IIRIRA, previously would have been applicable. See Antipova v. U.S. Attorney General, 392 F.3d 1259, 1264 (11th Cir. 2004). Furthermore, as part of the REAL ID Act of 2005, Pub.L. No. 109-13, 119 Stat. 231, which was signed into law on May 11, 2005, Congress has provided that a petition that formerly was governed by the transitional rules now "shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252), as amended by this section." Id., § 106(d). Thus, this

Sosa filed a memorandum addressing these jurisdictional questions, and the government filed a motion to dismiss Soto-Sosa's motion for lack of jurisdiction, we ordered that the motion to dismiss be carried with the case.

In response to our jurisdictional questions, Soto-Sosa argues that, because the CIS did not apply its discretion in denying his application for waiver, our review is not precluded by § 1252(a)(2)(B). Soto-Sosa also contends that, because we exercised our jurisdiction in reviewing a similar order reinstating removal in Sarmiento Cisneros v. U.S. Attorney General, 381 F.3d 1277 (11th Cir. 2004), the BICE's reinstatement order in the instant case also should be treated as a "final order" that is directly reviewable.

The government responds, in a motion to dismiss for lack of jurisdiction, that a § 1231(a)(5) reinstatement order merely reinstates a previously issued final order of removal and, thus, itself is a final order of the INS that is reviewable by this Court under § 1252(a)(2)(B). The government, however, argues that (1) we may not review the underlying removal order; and (2) our review of the reinstatement order is limited to determining (a) the identity of the alien, (b) whether the alien was subject to a prior removal order, and (c) whether the alien illegally re-entered the United States—all facts that Soto-Sosa has admitted. The government also contends that, although Soto-Sosa is attempting to challenge the

question is no longer unresolved.

5

order because he had sought relief from removal prior to the court's issuance of its reinstatement order, he is not eligible for this relief.

To the extent we ordered the parties to address whether § 1252(a)(2)(B) precludes our jurisdiction because Soto-Sosa's argument in his petition for review involves his application for a waiver to obtain discretionary relief, the government has failed to address this question. Nevertheless, before we may proceed to the merits of Soto-Sosa's petition, we "must first consider whether we have subject matter jurisdiction to hear the petition at all." Resendiz-Alcaraz v. U.S. Attorney General, 383 F.3d 1262, 1266 (11th Cir. 2004). We review subject matter jurisdiction de novo. Id.

Under the IIRIRA, an alien may adjust his status to legal permanent resident status if:

> (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

INA § 245(a); 8 U.S.C. § 1255(a). Pursuant to 8 U.S.C. § 1252(a)(2)(B), "no court shall have jurisdiction to review – (i) any judgment regarding the granting of relief under . . . [§] 1255 of this title . . .." INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i). Because this case involves an application for adjustment of status under § 1255(a), this jurisdictional bar is implicated.

6

Nevertheless, although § 1252(a)(2)(B) generally precludes appellate review of discretionary decisions, it "does not preclude review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief." Gonzalez-Oropeza v. U.S. Attorney General, 321 F.3d 1331, 1332 (11th Cir. 2003). Moreover, we retain jurisdiction over constitutional claims and questions of law raised in a petition of review. INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D) (as amended by the REAL ID Act of 2005). Because Soto-Sosa is petitioning for review of the BICE's order reinstating his prior expedited order of removal, instead of the denial of his request to adjust his status, and because the denial of his application for adjustment of status was based on his statutory ineligibility, the jurisdiction-stripping provision of § 1252(a)(2)(B) is not applicable here.

To the extent we also ordered the parties to address whether the BICE's reinstatement order is a "final order of removal" that is reviewable by this Court under INA § 242(a)(1), 8 U.S.C. § 1252(a)(1), we have not previously addressed this question.[5] However, in the context of determining whether a BIA determination that denied an applicant asylum and withholding of removal, but did not expressly order removal of the applicant in asylum-only proceedings, was a "final order of removal" for purposes of jurisdiction, we recently concluded that

_____

[5] As Soto-Sosa asserts, in Sarmiento Cisneros, we examined the retroactive effect of reinstatement provisions in § 1231(a)(5), but we did not explicitly discuss the basis for our jurisdiction. See generally Sarmiento Cisneros, 381 F.3d at 1278-85.

7

we had jurisdiction. See Nreka v. U.S. Attorney General, 408 F.3d 1361, 1367 (11th Cir. 2005). In doing so, we reasoned that the denial of asylum was closely tied to the removal of the alien. See id. Similarly, we concluded in Del Pilar v. U.S. Attorney General, 326 F.3d 1154 (11th Cir. 2003), that a BIA decision reversing the Immigration Judge's grant of a waiver of inadmissibility under INA § 212(c) was a final order of removal because there was nothing left for the petitioner to appeal. See id. at 1156-57.

The statute governing the reinstatement order on appeal includes that the prior order "is not subject to being reopened or reviewed," and that the individual subject to the order "is not eligible and may not apply for any relief under this chapter." See INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). Moreover, this statute provides no provisions for administrative review. See generally id. Thus, similar to the facts in Del Pilar, a petitioner subject to a reinstatement order has nothing left to appeal. See Del Pilar, 326 F.3d at 1156-57. In addition, as persuasive authority, the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have concluded that reinstatement orders are "final orders of removal" that are reviewable under § 1252(a)(1). See Arevalo v. Ashcroft, 344 F.3d 1, 9 (1st Cir. 2003); Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 105 (4th Cir. 2001); Ojeda-Terrazas v. Ashcroft, 290 F.3d 292, 294-95 (5th Cir. 2002); Behjjani v. INS, 271 F.3d 670, 674 (6th Cir. 2001); Lopez-Flores v. Dept. of Homeland Security, 387

8

F.3d 773, 774 (8th Cir. 2004); Castro-Cortez v. INS, 239 F.3d 1037, 1043-44 (9th

Cir. 2001); and Duran-Hernandez v. Ashcroft, 348 F.3d 1158, 1162 n.3 (10th Cir.

2003).  Thus, the order reinstating Alvarez's expedited order of removal is a "final

order of removal" for purposes of § 1252(a) jurisdiction.  We, therefore, deny the

government's motion to dismiss for lack of jurisdiction.

Examining the merits of Soto-Sosa's petition, he asserts that the BICE erred

in issuing the reinstatement order because he had applied for permission to reapply

for reentry, pursuant to 8 C.F.R. § 212.2(E).  Citing to the Ninth Circuit's opinion

in Perez-Gonzalez v. Ashcroft, 379 F.3d 783, 788 (9th Cir. 2004), Soto-Sosa

contends that he had applied for a discretionary waiver to reapply for reentry

before his prior removal order was reinstated, and that, had this application for a

discretionary waiver been granted, it would have cured any inadmissibility grounds

premised on his prior removal or subsequent illegal reentry.[6]

We review de novo the interpretation of a statute by the agency that

administers it.  Sarmiento Cisneros, 381 F.3d at 1279-80 (citing Chevron U.S.A.

Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 2782,

81 L.Ed.2d 694 (1984)).  When a statute is unambiguous, we "give[s] overriding

---

[6] In challenging the BICE's order reinstating his expedited order of removal, Soto-Sosa is not challenging the constitutionality of, or the regulations governing, the reinstatement statute. Thus, we deem any such arguments abandoned.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 n.12 (11th Cir. 2001) (concluding that the petitioners abandoned an issue by failing to raise it in their initial appellate brief).

9

deference to [its] unambiguous language." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002). We "begin with the language Congress has chosen and assume that the words used are intended to carry their ordinary meaning." Assa'ad v. U.S. Attorney General, 332 F.3d 1321, 1329 (11th Cir. 2003). On the other hand, if a statute's language is ambiguous, we ordinarily defer to a reasonable interpretation by the agency administering it. Sarmiento Cisneros, 381 F.3d at 1280.

As discussed above, the reinstatement statute provides for the reinstatement of an order of removal as to any alien who has reentered the United States illegally. It specifically includes:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).[7]

We have not addressed whether aliens subject to § 1231(a)(5)'s bar to relief may, nevertheless, seek and receive adjustment of status, pursuant to INA § 245(a),

---

[7] As discussed above, Congress recently provided as part of the REAL ID Act, that, despite the sweeping language of the IIRIRA's bar on judicial review, nothing in the Act "shall be construed as precluding review of constitutional claims and questions of law raised upon a petition for review filed with an appropriate court of appeals . . . ." See INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D) (as amended by the REAL ID Act., § 106(a)(1)(A)(iii)). However, this new legislation has not affected the reinstatement statute.

8 U.S.C. § 1255(a). Indeed, we only have interpreted § 1231(a)(5) to the extent we have decided that (1) Congress did not unambiguously express its intent regarding the temporal scope of the statute; and (2) the application of the statute to a petitioner, who had reentered the United States and applied for relief before the effective date of the IIRIRA, produced an impermissible retroactive effect. See Sarmiento Cisneros, 381 F.3d at 1285.

Other circuits, however, have concluded, at least when retroactivity is not a factor, that the reinstatement statute precludes aliens subject to reinstatement from obtaining adjustment of status, pursuant to INA § 245, 8 U.S.C. § 1255. See Lattab v. Ashcroft, 384 F.3d 8, 16-17 (1st Cir. 2004); Warner v. Ashcroft, 381 F.3d 534, 540 (6th Cir. 2004); Gomez-Chavez v. Perryman, 308 F.3d 796, 801-03 (7th Cir. 2002); Flores v. Ashcroft, 354 F.3d 727, 730-31 (8th Cir. 2003); Padilla v. Ashcroft, 334 F.3d 921, 925 (9th Cir. 2003); Berrum-Garcia v. Comfort, 390 F.3d 1158, 1164 n.7 (11th Cir. 2004). In reaching their conclusions, the Ninth and Tenth Circuits explained that, if Congress had intended to allow a class of illegally reentering aliens to escape the reinstatement statute's clearly written bar on "any relief," it would have stated so. See Padilla, 334 F.3d at 925; see also Berrum-Garcia, 390 F.3d at 1164 n.7 (same). Moreover, as discussed above, we implicitly determined that this preclusion exists when we evaluated whether the preclusive effect of the reinstatement statute should be applied retroactively. See Sarmiento

11

Cisneros, 381 F.3d at 1279-80; see also Arevalo v. Ashcroft, 344 F.3d at 5 (same);

Velasquez-Gabriel, 263 F.3d at 109-10 (same); Ojeda-Terrazas, 290 F.3d at 301-02

(same).

To the extent Soto-Sosa is relying on Perez-Gonzalez, the Ninth Circuit

concluded in Perez-Gonzalez that the appeal was distinguishable from Padilla

because, unlike the alien in Padilla, the alien in Perez-Gonzalez had applied for a

discretionary waiver to reapply for reentry, pursuant to 8 C.F.R. § 212.2(e), before

his prior deportation order had been reinstated.  Perez-Gonzalez, 379 F.3d at 788.

The Perez-Gonzalez court discussed that (1) § 212.2(e) would have offered the

alien a means of avoiding the need to circumvent § 1231(a)(5)'s bar to

discretionary relief; (2) given that the alien applied for the waiver before his

deportation order was reinstated, he was not yet subject to § 1231(a)(5)'s bar on

applying for relief; and (3) had the Attorney General exercised his discretion in the

alien's favor, the alien no longer would have been subject to reinstatement.  Id.

Moreover, the court discussed that (1) the INS erred when it concluded that the

alien could not apply for a § 212(e) waiver from within this country; and (2) the

alien's grounds of inadmissibility either could be cured by the § I-212(e) waiver, or

they would not bar adjustment of status.  Id. at 788-95.  The Perez-Gonzalez court,

thus, concluded that the INS legally erred by denying the alien's application for

adjustment of status on the ground that it was barred by § 1231(a)(5), and it

12

remanded the case to the CIS for a discretionary determination of the I-212(e) waiver.  Id. at 795-96.

As other circuits have explained, however, the Ninth Circuit's decision in Perez-Gonzalez  arguably rests on a misinterpretation of § 1231(a)(5).  In Lattab, the First Circuit discussed that, when Congress enacted the IIRIRA, "it plainly was dissatisfied with the performance of the former reinstatement provision," and it "believed that the reinstatement regime should be . . . reformed to function swiftly and promptly."  Lattab, 384 F.3d at 19 (citing S. Rep. 104-249 at 7 (1995) ("Aliens who violated U.S. Immigration Law should be removed from this country as soon as possible"); H.R.Rep. No. 104-469, pt. 1 at 134 (1996) (labeling pre-IIRIRA reinstatement procedures "cumbersome and duplicative," and predicting that IIRIRA would correct these problems)).[8]

The Lattab court also concluded that the petitioner's argument, that § 1231(a)(5)'s bar to relief was not applicable because he applied for adjustment of status before the government actually reinstated the prior order of deportation, was

---

[8]  The First Circuit explained in Lattab that, prior to the enactment of the IIRIRA, (1) only illegal reentrants who previously had been deported on certain specified grounds (e.g., conviction for an aggravated felony) were subject to having their original deportation orders reinstated; (2) an illegal reentrant had a right to a hearing, presided over by an immigration judge, before reinstatement; and (3) an illegal reentrant could petition fro discretionary relief in the form of an adjustment of status to that of an alien lawfully admitted for permanent residence. See Lattab, 384 F.3d at 12-13.

13

foreclosed by the text of the statute.  Lattab, 384 F.3d at 16.  The First Circuit

specifically determined that:

> Section 241(a)(5) subjects an illegal reentrant to three independent
> consequences: reinstatement of the prior deportation order,
> ineligibility for any relief, and removal.  Grammatically, section
> 241(a)(5) does not make ineligibility for relief dependent upon
> reinstatement of the prior deportation order.  And even if it did,
> section 241(a)(5) expressly makes reinstatement retroactive to the date
> of the original deportation order.

Id.  Moreover, although the First Circuit concluded that the petitioner had waived

any reliance on Perez-Gonzalez by failing to cite to it in his initial brief, the First

Circuit noted that it "ha[d] grave doubts about the correctness of the Perez-

Gonzalez court's conclusion" because (1) "permission to reenter, like adjustment

of status, is relief under the INA, which section 241(a)(5) precludes an illegal

reentrant from seeking"; and (2) the Ninth Circuit relied too heavily on regulations

that predated the IIRIRA.  Id. at 16-17.

The Tenth Circuit in Berrum-Garcia also disagreed with the Ninth Circuit's

reasoning and decision in Perez-Gonzalez, explaining that:

> Section 1231(a) states not only that an illegal reentrant 'may not
> apply' for relief, but also that he is 'not eligible' for relief.  Once
> Petitioner's prior removal order has been reinstated, he no longer
> qualifies for any relief under the INA, regardless of whether his
> applications for relief were filed before or after the reinstatement
> decision is made.  The timing of Petitioner's applications is simply
> immaterial.

14

Berrum-Garcia, 390 F.3d at 1163.  The Tenth Circuit further explained that its

interpretation of the reinstatement statute was supported by Congress's subsequent

amendments to the Legal Immigration Family Equity Act ("LIFE Act"), Pub.L.

No. 106-554, 114 Stat. 2763 (2000).[9]  Berrum-Garcia, 390 F.3d at 1164.  The

Tenth Circuit, similar to the First Circuit in Lattab, also concluded as a matter of

statutory interpretation that § 1231(a)(5) bar to "any relief" applied to I-212

requests for permission to reapply for admission to the United States.  Id. at 1164-

65.

In any event, as the government contends, we need not determine whether

aliens subject to § 1231(a)(5)'s bar to relief may seek and receive adjustment of

status, whether it is sought before or after the reinstatement order issues, because

Soto-Sosa was not eligible for adjustment of status.  As discussed above, a non-

immigrant seeking to adjust his status to legal permanent resident status must

show, among other things, that he "is eligible to receive an immigrant visa and is

admissible to the United States for permanent residence."  See  INA § 245(a); 8

U.S.C. § 1255(a).  An alien, such as Soto-Sosa, who "falsely represents, or has

falsely represented himself or herself to be a citizen of the United States for any

---

[9]  The LIFE Act provides the Attorney General with the authority to waive
inadmissibility under § 1182(a)(9)(A) and (a)(9)(C) for an alien applying for adjustment of status
under § 202 of the Nicaraguan and Central American Relief Act and § 902(a) of the Haitian
Refugee Immigration Fairness Act of 1998.  See Pub.L. No. 106-554, 114 Stat. 2763 (2000).

15

purpose of benefit under this Act . . . is inadmissible." See INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii). Moreover, § 1182(a)(6)(C)(ii) is a non-waivable ground of inadmissibility. See INA §§ 212(a)(6)(C)(iii) & (i), 8 U.S.C. §§ 1182(a)(6)(C)(iii) &1182(i) (limiting the Attorney General's discretionary waiver to inadmissibility under § 1182(a)(6)(C)(i)—the inadmissibility ground applicable for fraudulent or willful misrepresentation of a material fact for immigration purposes).[10] Thus, contrary to Soto-Sosa's argument, he was ineligible for a waiver, pursuant to § 1182(a)(9)(A)(i) and (iii), and, therefore, ineligible for adjustment of status, pursuant to § 1255(i).

Accordingly, we conclude that the BICE's order reinstating Soto-Sosa's prior expedited order of removal was not erroneous, regardless of whether aliens subject to the reinstatement act's bar to relief may seek and receive adjustment of status. We, therefore, deny Soto-Sosa's petition for review.

**PETITION DENIED.**

---

[10] In contrast, the alien at issue in Perez-Gonzalez was inadmissible under INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (alien present without admission or parole); INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) (misrepresentation); and INA § 212(a)(9)(A), (B), and (C), 8 U.S.C. § 1182(a)(9)(A), (B), (C) (alien previously removed) —grounds of inadmissibility that the Ninth Circuit determined could be cured by I-212(e) waiver or would not bar adjustment of status. See Perez-Gonzalez, 379 F.3d at 790-95.