**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABELINO FRANCISCO CHAY IXCOT,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 09-71597

Agency No.
A029-283-431

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2011—Seattle, Washington

Filed June 1, 2011

Before: Betty B. Fletcher, Richard A. Paez, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge B. Fletcher

## COUNSEL

Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington, for petitioner Abelino Francisco Chay Ixcot.

Andrew Jacob Oliveira and Michael Christopher Heyse, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent Eric H. Holder Jr.

## OPINION

B. FLETCHER, Circuit Judge:

We must decide whether the reinstatement provision enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), INA

§ 241(a)(5), 8 U.S.C. § 1231(a)(5), applies retroactively to a petitioner who applied for discretionary relief prior to IIRIRA's effective date. Following the First, Seventh, Tenth and Eleventh Circuits, we hold that the application of INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), is impermissibly retroactive when applied to such petitioners. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Accordingly, we grant the petition for review in part and remand for further proceedings. Because we lack jurisdiction to review agency determinations of eligibility for special rule cancellation of removal under § 203 of the Nicaraguan Adjustment and Central American Relief Act of 1997 (NACARA),[1] however, we deny the petition in part.

# I.

Petitioner Francisco Abelino Chay Ixcot ("Chay") is a native and citizen of Guatemala. He entered the United States without inspection on or about February 13, 1989, near San Ysidro, California, and was immediately apprehended by the Immigration and Naturalization Service ("INS").[2] At that time, Chay claimed his name was Juan Mendez-Lopez, that he was a native and citizen of El Salvador, and that he was sixteen years old.

Chay was detained and placed in deportation proceedings[3]

---

[1]NACARA, which is not codified in the U.S. Code, was signed into law on November 19, 1997. *See* Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644, 2644-45 (1997).

[2]The INS ceased to exist in 2003, and most of its functions were transferred to the Department of Homeland Security. *See, e.g.*, *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 n.7 (9th Cir. 2007) (en banc).

[3]IIRIRA "replaced all references to 'deportation' with 'removal.'" *Morales-Izquierdo*, 486 F.3d at 488 n.3; *see also, e.g.*, *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 854 n.6 (9th Cir. 2004) ("The IIRIRA merged deportation and exclusion proceedings into the broader category of 'removal' proceedings.").

before an immigration judge ("IJ"). At the first deportation hearing, the IJ agreed to continue the proceeding to afford Chay an opportunity to find an attorney, and provided Chay with an attorney information sheet containing the names and phone numbers of lawyers who could be retained to assist him.

Chay reappeared before the IJ during a group deportation hearing a little over two weeks later. As before, he was without counsel; when the IJ asked why this was so, Chay explained that the lawyer he had contacted was unable to represent him. Chay again stated that his name was Juan Mendez-Lopez, that he was a native and citizen of El Salvador, and that he was sixteen years old, and admitted that he had entered the United States without inspection. The IJ then asked Chay whether he was afraid to return to El Salvador for any reason. Chay answered "yes," and explained that his family was embroiled in a dispute with the owners of an apartment building in which his family had rented certain units. On the basis of this response, the IJ concluded that any issues Chay might have if deported to El Salvador were "problems of a personal nature" that could not support an asylum claim.

At the end of the hearing, the IJ ordered Chay and several other individuals deported. Prior to concluding the hearing, however, the IJ asked whether any person wished to appeal his decision. The transcript of the hearing reflects that an unnamed individual indicated an intent to appeal, and that the IJ supplied this individual with an appeal form. Although the transcript does not reflect whether this petitioner was Chay, Chay did timely file a notice of appeal with the Board of Immigration Appeals ("BIA"). The notice of appeal was received March 18, 1989, and Chay was released from detention on March 23, 1989.

One year later, the Executive Office of Immigration Review ("EOIR") served Chay with a copy of the IJ's decision and the transcript of his deportation hearing. Chay was

instructed to file his appeal brief by April 9, 1990, but did not do so. Consequently, the BIA summarily dismissed Chay's appeal on September 26, 1990.

In April 1993, Chay filed an affirmative asylum application. The application was filed under his real name, indicated that he was a native and citizen of Guatemala, and stated that his year of birth was 1967.[4] As the basis for his asylum claim, Chay marked "political opinion" and explained that he was an indigenous farmer from Guatemala whom guerrillas had threatened with death when he had refused to help their cause in the 1980s. Four months after Chay filed his asylum application, in August 1993, he visited Guatemala for three weeks to marry his fiancée.[5] He then returned to the United States, again entering without inspection.

Chay's asylum application languished some twelve years; there is no explanation for this extremely lengthy delay in its adjudication. In September 2005, Chay attended an interview for his pending asylum application and to determine whether he qualified for lawful permanent residence under NACARA. The Department of Homeland Security ("DHS") concluded that Chay was ineligible for relief under NACARA because he had failed to register for the so-called "*ABC* benefits" under *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991).[6] No decision was made on Chay's eligibility for asylum relief.

---

[4]Since his deportation hearings, Chay has claimed consistently on official documents that his year of birth is 1967, which would mean that he was twenty-one years old, not sixteen, when he appeared before the IJ in 1989.

[5]Chay's wife now also resides in the United States. They have three children. One is a citizen of Guatemala; the other two are U.S. citizens.

[6]To be eligible for "special rule cancellation of removal" under NACARA § 203, an alien, *inter alia*, must have registered as an *ABC* class member. *See* 8 C.F.R. § 1240.61. As relevant here, a registered *ABC* class member is any Guatemalan national who: (1) first entered the United States on or before October 1, 1990 and (2) properly submitted an ABC registration form to the INS on or before December 31, 1991. *See id.* § 240.60.

Chay supplied DHS with additional information salient to his asylum application in December 2005, and, in February 2006, filed a request to add his wife and oldest child to his application. In July 2007, Chay and his wife attended another asylum interview, along with their immigration lawyer. Again, no decision was made.

Chay appeared for yet another asylum interview on May 19, 2009, once more accompanied by his wife and his immigration lawyer. At that time, an Immigration and Customs Enforcement ("ICE") officer met Chay in the lobby and ran a fingerprint query, which matched a record belonging to Juan Mendez-Lopez. Through an interpreter, Chay then submitted a sworn statement in which he admitted to having used an alias, and stated that he had never been informed that he previously had been ordered deported. When asked whether he had any fear of persecution or torture if removed from the United States, Chay answered "Yes, because my whole family was killed in Guatemala." He stated that he had witnessed the deaths of his mother and father, and asserted "I would like to ask a chance to fight my case. I fear if I am removed I too will be killed in Guatemala."

Thereafter, instead of adjudicating Chay's pending asylum application, DHS processed Chay for reinstatement of the IJ's 1989 order of deportation[7] pursuant to the post-IIRIRA reinstatement provision, INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), and the attendant regulations, 8 C.F.R. § 241.8. The asylum office simultaneously issued a letter advising Chay that, since

---

[7]As DHS concedes, it erred in reinstating the IJ's 1989 decision rather than the BIA's 1990 final order of removal. *See* 8 U.S.C. § 1101(a)(47)(B) (defining "final" order of removal); 8 C.F.R. § 241.8 (setting out procedural requirements for reinstatement under INA § 241(a)(5)); *see also, e.g.*, *Lin v. Gonzales*, 473 F.3d 979, 982-83 (9th Cir. 2007) (discussing proper procedures for post-IIRIRA reinstatement of removal). In light of our holding that IIRIRA's reinstatement provision is impermissibly retroactive as applied to Chay, we need not address the government's contention that this error was harmless.

his prior order of deportation had been reinstated, he was statutorily ineligible for any immigration relief.

One week later, Chay filed the instant petition for review. We have jurisdiction to review final agency orders of removal, including reinstatement orders, pursuant to INA § 242(a)(1), 8 U.S.C. § 1252(a)(1), subject to the standard requirements for petitions for review, 8 U.S.C. § 1252(b). "The proper standard of review in immigration proceedings depends on the nature of the decision being reviewed." *Aguilar Gonzalez v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008). Pure questions of law raised in a petition for review are reviewed de novo. *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009). Factual findings are reviewed for substantial evidence, *see* 8 U.S.C. § 1252(b)(4)(B); *Hamazaspyan*, 590 F.3d at 747, and "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## II.

Chay argues that, because he submitted an affirmative application for asylum three years before IIRIRA was enacted,[8] DHS erred in retroactively applying IIRIRA's reinstatement provision to him. The government contends that IIRIRA's reinstatement provision can be applied to Chay because it does not affect any substantive rights, create any new liabilities, attach any new legal consequences, or take away any vested interests. Rather, according to the government, INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), "merely withdraws [Chay's] eligibility for a form of immigration relief which is granted in the broad discretion of the adjudicator."[9]

---

[8]IIRIRA was enacted on September 30, 1996, but did not become effective and enforceable until April 1, 1997. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 45 (2006).

[9]The government additionally asserts that Chay's petition is without merit because Chay abandoned his pending asylum application when he

"We . . . review de novo whether an application of IIRIRA is impermissibly retroactive." *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 932 (9th Cir. 2007).

## A.

**[1]** The Immigration and Nationality Act (INA), enacted in 1952, included a reinstatement provision, which stated in relevant part:

> **Unlawful entry.** Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry.

8 U.S.C. § 1252(f) (1994 ed.) (repealed 1996). This reinstatement provision was limited: it applied only to those individuals "deported for engaging in certain unlawful activities—e.g., smuggling, marriage fraud, crimes of moral turpitude, multi-

---

returned to Guatemala to marry his fiancée. The government relies on 8 C.F.R. § 208.8 (1993), which stated:

> An applicant who leaves the United States pursuant to advance parole granted under 8 C.F.R. § 212.5(e) shall be presumed to have abandoned his application under this section if he returns to the country of claimed persecution unless he is able to establish compelling reasons for having assumed the risk of persecution in so returning.

By its plain terms, this provision is inapplicable to Chay, who never left the United States pursuant to advance parole.

ple criminal convictions, aggravated felonies, illegal drug use or dealing, and terrorism activities." *Morales-Izquierdo*, 486 F.3d at 494 n.11 (citing INA § 242, 8 U.S.C. § 1252 (1994 ed.) (repealed 1996)). Because Chay's 1990 removal order was based on his having entered the country without inspection, the pre-IIRIRA reinstatement provision did not apply to him.

**[2]** In 1996, Congress enacted IIRIRA, which contained a provision that "dramatically expanded the class of aliens subject to reinstatement, while narrowing the defenses available in such proceedings." *Id.* at 494; *see also Arevalo v. Ashcroft*, 344 F.3d 1, 5 (1st Cir. 2003) (enumerating material differences between pre- and post-IIRIRA reinstatement provisions). The new reinstatement provision reads:

> **Reinstatement of removal orders against aliens illegally reentering.** If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). Notwithstanding the seemingly absolute bar on immigration relief for immigrants subject to the post-IIRIRA reinstatement provision, however, even aliens subject to the new statute

> may seek withholding of removal under 8 U.S.C. § 1231(b)(3)(A) (2000 ed.) (alien may not be removed to country if "the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a

particular social group, or political opinion"), or
under 8 C.F.R. §§ 241.8(e) and 208.31 (2006) . . . .

*Fernandez-Vargas*, 548 U.S. at 35 n.4.[10]

### B.

**[3]** "The Due Process Clause . . . protects the interests in
fair notice and repose that may be compromised by retroac-
tive legislation . . . ." *Landgraf*, 511 U.S. at 266. "The Legis-
lature's unmatched powers allow it to sweep away settled
expectations suddenly and without individualized consider-
ation. Its responsivity to political pressures poses a risk that
it may be tempted to use retroactive legislation as a means of
retribution against unpopular groups or individuals." *Id.*; *see
also INS v. St. Cyr*, 533 U.S. 289, 315 & n.39 (2001).

In analyzing the retroactivity of a statute, we follow a two-
step test. *Landgraf*, 511 U.S. at 280. We must first assess
whether Congress expressed its intention as to the temporal
reach of the legislation. *Id.*; *see also St. Cyr*, 533 U.S. at 316
("A statute may not be applied retroactively, however, absent
a clear indication from Congress that it intended such a

---

[10]The regulations also make clear that IIRIRA's reinstatement provision
does not bar immigration relief in the form of withholding of removal. *See*
8 C.F.R. § 241.8(e).

Moreover, under 8 C.F.R. § 208.31, "any alien . . . whose deportation,
exclusion, or removal order is reinstated under [INA §] 241(a)(5) who, in
the course of the administrative removal or reinstatement process,
expresses a fear of returning to the country of removal" is to be "referred
to an asylum officer for a reasonable fear determination," which is typi-
cally "conducted within 10 days of the referral." *Id.* § 208.31(a)-(b). If the
asylum officer determines that the alien does, in fact, have a reasonable
fear of persecution or torture, he is to refer the alien's case to an immigra-
tion judge, who is to determine the alien's eligibility for withholding of
removal. Any such adjudication may be appealed to the BIA. *Id.*
§ 208.31(e). Upon the alien's request, an IJ may review an asylum offi-
cer's determination that the alien does *not* have a reasonable fear of perse-
cution or torture. *Id.* § 208.31(f)-(g).

result."). "The standard for finding such unambiguous direction is a demanding one." *St. Cyr*, 533 U.S. at 316. "In the absence of language" directly on point, "we [must] try to draw a comparably firm conclusion about the temporal reach specifically intended by applying 'our normal rules of construction.' " *Fernandez-Vargas*, 548 U.S. at 37 (quoting *Lindh v. Murphy*, 521 U.S. 320, 326 (1997)). In the immigration context, where there exists a "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien," the demand for a clear statement from Congress takes on added importance. *St. Cyr*, 533 U.S. at 320 (citation omitted). "If there is such a clear indication from Congress, our analysis under *Landgraf* ends because 'it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect.' " *Hernandez de Anderson*, 497 F.3d at 935 (quoting *St. Cyr*, 533 U.S. at 316).

In *Fernandez-Vargas*, the Supreme Court examined INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), and concluded that Congress had not expressly prescribed the new reinstatement provision's temporal reach.[11] *See* 548 U.S. at 38-42;[12] *see also,*

---

[11]Notably, although Congress did consider including language that would apply the reinstatement provision retroactively to reentries that occurred before its enactment, the version of the statute ultimately enacted omitted any such retroactive language. *Compare* H.R. Rep. No. 104-469(I) at 416-17 (Mar. 4, 1996) (containing no retroactive language) *with* S. Rep. No. 104-249 at 118 (Apr. 10, 1996) (containing the following language: "whether before or after the date of enactment of this Act") *and* H.R. Rep. No. 104-828 at 54 (Sept. 24, 1996) (agreeing to recommend the House version of the new reinstatement provision, which omitted expressly retroactive language). Congress's intent in omitting this language, however, is not entirely clear. *See Fernandez-Vargas*, 548 U.S. at 39 & n.7 (discussing one theory in support of the omission while avoiding the conclusion that the omission was deliberate). Therefore, the legislative history of the provision is not probative on this matter.

[12]*Fernandez-Vargas* thus abrogated our circuit's prior holding that "Congress intended [INA] § 241(a)(5) to encompass only post-enactment reentries." *Castro-Cortez v. INS*, 239 F.3d 1037, 1052 (9th Cir. 2001).

*e.g.*, *Arevalo*, 344 F.3d at 13 ("What comes through loud and clear is that Congress failed to specify the temporal reach of the INA's reinstatement provision . . . . To sum up, [§] 241(a)(5) is hopelessly unclear as to whether it applies to those who illegally reentered the United States before April 1, 1997."). Accordingly, "we may readily dispose of *Landgraf*'s first step." *Hernandez de Anderson*, 497 F.3d at 936.

**[4]** Where, as here, congressional intent cannot be ascertained, we proceed to a second inquiry: whether the statute, as applied, would have a "retroactive effect." A statute does not have such an effect "merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269. Instead, the question is whether the statute's application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. In making this determination, we are "informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations," and exercise "a commonsense, functional judgment about whether [IIRIRA] attaches new legal consequences to events completed before its enactment." *St. Cyr*, 533 U.S. at 321 (quoting *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (internal quotation marks omitted)). If we find that the statute does create a retroactive effect, the "traditional presumption teaches that [the statute] does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280.

## C.

In 2006, the Supreme Court granted certiorari "to resolve a split among the Courts of Appeals over the application of [INA] § 241(a)(5) to an alien who reentered illegally before IIRIRA's effective date." *Fernandez-Vargas*, 548 U.S. at 36. Humberto Fernandez-Vargas, a citizen of Mexico, had entered and reentered the United States several times without

inspection in the 1970s and early 1980s. A deportation order was entered against him in 1981, after which Fernandez-Vargas committed his last reentry without inspection, in 1982. He lived in Utah for over twenty years, fathering a U.S. citizen son in 1989 and marrying his son's mother, also a U.S. citizen, in 2001. Fernandez-Vargas's wife then filed a relative-visa petition on his behalf, and he filed an application to adjust his status to that of lawful permanent resident. This sequence of events, however, alerted the authorities to Fernandez-Vargas's unlawful presence in the United States, and in November 2003, the government commenced proceedings under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), to reinstate the 1981 deportation order. *Id.* at 35-36.

Fernandez-Vargas petitioned for review, arguing that, because his last reentry without inspection occurred before IIRIRA's effective date, the controlling reinstatement provision was the repealed INA § 242(f), which meant that he remained eligible to apply for adjustment of status as the spouse of a U.S. citizen. *Id.* He further argued that the application of INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), to bar his adjustment of status would be impermissibly retroactive.

The Supreme Court disagreed, finding that the application of IIRIRA's reinstatement provision was not impermissibly retroactive in Fernandez-Vargas's case. In reaching this conclusion, the Supreme Court emphasized that Fernandez-Vargas had *not* applied for any relief from removal *before* IIRIRA's effective date, despite having had the opportunity to do so. The Court explained:

> The forms of relief identified by Fernandez-Vargas as rendered unavailable to him by [INA] § 241(a)(5) include cancellation of removal, see 8 U.S.C. § 1229b(b), adjustment of status, see § 1255, and voluntary departure, see § 1229c. These putative claims to relief are not "vested rights," a term that describes something more substantial than inchoate

> expectations and unrealized opportunities . . . .
> Fernandez-Vargas's claim to such relief was contin-
> gent, and *it was up to him to take some action that
> would elevate it above the level of hope.* It is not that
> these forms of relief are discretionary . . . it is rather
> that *before IIRIRA's effective date Fernandez-
> Vargas never availed himself of them or took action
> that enhanced their significance to him in particular*
> . . . .

*Id.* at 44 n.10 (emphases added; citations omitted); *see also id.*
at 46 (Alternatively, Fernandez-Vargas "could have married
the mother of his son and applied for adjustment of status dur-
ing that period, in which case he would at least have had a
claim (about which we express no opinion) that proven reli-
ance on the old law should be honored by applying the pre-
sumption against retroactivity.").

The holding in *Fernandez-Vargas* is, by its express terms,
limited to instances where an alien had been ordered deported
and reentered without inspection but *took no action* to adjust
status or obtain other relief from removal before IIRIRA's
effective date. Chay, by contrast, *did* file an affirmative appli-
cation for asylum relief in 1993, well in advance of IIRIRA's
effective date.

## D.

**[5]** Although the Supreme Court has not addressed
whether INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), is imper-
missibly retroactive in cases such as Chay's, every circuit that
has considered this question has held that the reinstatement
provision cannot be so applied. So do we.

In *Arevalo*, the First Circuit held that INA § 241(a)(5), 8
U.S.C. § 1231(a)(5), "would, if given retroactive effect,
unfairly attach new legal consequences to the petitioner's pre-
existing application for an adjustment of status." 344 F.3d at

16. In that case, the petitioner arrived in the United States without inspection in 1986 using a pseudonym. She was apprehended and ordered deported to her native Guatemala. *Id.* at 5-6. In 1990, she reentered, again without inspection, using a different name. Her father, a lawful permanent resident, filed a visa petition on her behalf in August 1990, and in March 1996, she applied for adjustment of status. On that application, Arevalo falsely swore that she had never been deported from the United States. *Id.* at 6. In 2002, upon discovery of her prior deportation, government authorities informed Arevalo that her application for adjustment of status would not be considered. Then, in January 2003, the government detained Arevalo and commenced reinstatement proceedings against her pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). *Id.*

The First Circuit granted the petition for review, concluding that Arevalo "can and does contest . . . the sudden negation of her application for discretionary relief." *Id.* at 14. The court held that "[t]he availability of relief (or, at least, the opportunity to seek it) is properly classified as a substantive right," and that there was "no reason why the bar on applications for [discretionary] relief under [INA] section 241(a)(5) should be deemed an exception to this general rule." *Id.* In response to the government's argument "that the petitioner had no protectable interest in applying for relief because an adjustment of status was never a vested right," the First Circuit held to the contrary, explaining:

> We think that the INS circumscribes the enceinture[13] of relevant interests too grudgingly . . . . the presumption against statutory retroactivity is not restricted to cases involving vested rights . . . . and most important, the petitioner in this case applied for

---

[13]Enceinture is likely derived from the French word *enceinte*, defined as "the structures or area protected by an encircling fortification." *See* WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1994).

adjustment of status before April 1, 1997 a fact that distinguishes her in a material way from the mine run of persons who appeal from the reinstatement of previous removal orders . . . . This is a salient distinction because applications for discretionary relief, once made, often become a source of expectation and even reliance.

*Id.* (citations omitted). Significantly, the Supreme Court acknowledged but did not overrule or otherwise opine on the holding in *Arevalo* in *Fernandez-Vargas*. *See* 548 U.S. at 36 n.5 (citing *Arevalo*).

In *Sarmiento Cisneros v. Attorney General*, 381 F.3d 1277 (11th Cir. 2004), the petitioner, a native and citizen of Mexico, overstayed his tourist visa and was deported in October 1996. He reentered without inspection the next month, and, in March 1997, married a U.S. citizen. His wife immediately filed a visa petition for an alien relative on Sarmiento's behalf, and he applied for adjustment of status. Both the visa petition and the application to adjust status were approved. *Id.* at 1279.

Thereafter, in August 1998, the government mailed Sarmiento a notice of intent to rescind adjustment of status, and in June 2003, ICE issued a notice of intent to reinstate Sarmiento's 1996 deportation order pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). *Id.*

The Eleventh Circuit granted Sarmiento's petition for review and vacated the reinstatement order. Applying the Supreme Court's reasoning in *St. Cyr*, the court explained:

Before the IIRIRA, an alien who had been previously deported and illegally reentered the United States was eligible for the discretionary relief of adjustment of status under 8 U.S.C. [§] 1255(i). *See* 8 U.S.C. § 1255(i). Although the pre-IIRIRA statute

empowered the Attorney General to reinstate deportation orders, the authority was limited to a small group of aliens of which Sarmiento was not a member. *See* 8 U.S.C. § 1252(f) (repealed 1996). The IIRIRA eliminated the availability of any relief for an alien who illegally reenters the United States and broadened the applicability of the [reinstatement] statute to all aliens. *See* 8 U.S.C. [§] 1231(a)(5). . . . The IIRIRA, therefore, created a new disability for Sarmiento.

381 F.3d at 1283-84.

As it had done in *Arevalo*, the government argued that, because the relief which the petitioner sought was discretionary, it was akin to "an act of grace" that could not serve as "a defense to removal." *Id.* at 1284. In response, the Eleventh Circuit explained that the Supreme Court had "rejected this reasoning in *St. Cyr*," when it held that courts "must consider an 'alien's reasonable reliance on the continued availability of discretionary relief from deportation when deciding whether the elimination of such relief has a retroactive effect.' " *Id.* (quoting *St. Cyr*, 533 U.S. at 324). *St. Cyr* held that "[t]here is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." 533 U.S. at 325. Given this precedent, the Eleventh Circuit concluded that the fact "[t]hat adjustment of status relief is discretionary does not defeat Sarmiento's argument that section 1231(a)(5) has an impermissible retroactive effect when applied to him." *Sarmiento Cisneros*, 381 F.3d at 1284 (citing *Arevalo*, 344 F.3d at 15).

The Seventh Circuit followed the First and the Eleventh in *Faiz-Mohammed v. Ashcroft*, 395 F.3d 799 (7th Cir. 2005). Reviewing relevant precedent, the court explained:

The courts have looked to whether [INA § 241(a)(5), 8 U.S.C.] § 1231(a)(5) disturbs the petitioner's sub-

stantive rights or expectations. When retroactive application has affected only the way in which a petitioner's deportation is adjudicated, because, for instance, the petitioner failed to apply for discretionary relief prior to IIRIRA's effective date, no "settled expectations" were disturbed, and, therefore no impermissible retroactive effect occurred. However, when retroactive application not only affected the way in which the petitioner's deportation was adjudicated, but also affected the substantive relief that was available to the petitioner, [INA § 241(a)(5), 8 U.S.C.] § 1231(a)(5) could not be applied retroactively.

*Id.* at 809 (footnote and citations omitted). Applying this framework, the Seventh Circuit held that, since Faiz-Mohammad had reentered the United States *and* applied for adjustment of status *prior* to IIRIRA's effective date, he "had the right to have his adjustment of status adjudicated, including the waivers of inadmissibility necessary to his application." *Id.* at 810.

The Seventh Circuit acknowledged that Faiz-Mohammed "had no guarantee of a favorable decision," but explained that the second prong of the *Landgraf* inquiry "also asks whether retroactive application [of a statute] would create a new obligation, impose a new duty, or attach a new disability." *Id.* (citation and punctuation omitted). Because the new reinstatement provision "prevents aliens who previously have been deported from applying for discretionary relief[, t]his change constitutes a 'new disability' that did not exist prior to IIRIRA's passage." *Id.* The application of this provision to an immigrant like Faiz-Mohammad, therefore, was impermissibly retroactive under *Landgraf. Id.*

The Tenth Circuit is the most recent to have addressed this issue on comparable facts. In *Valdez-Sanchez v. Gonzales*, 485 F.3d 1084 (10th Cir. 2007), as in *Sarmiento Cisneros*, the

petitioner had reentered without inspection prior to IIRIRA's enactment date, married a U.S. citizen, applied for adjustment of status, and received approval from the INS. *Id.* at 1086. Reviewing the various precedents discussed *supra*, the court concluded:

> [W]e agree with our sister circuits that when application of IIRIRA § 241(a)(5) disturbs an alien's substantive rights or expectations, such as the substantive relief available to the Petitioner in this case, DHS may not apply it retroactively. Like the aliens in the cases from the First, Seventh, and Eleventh Circuits, Petitioner applied for discretionary relief in the form of an adjustment of status prior to IIRIRA's enactment, relief that was available to him at the time. Section 241(a)(5) eliminates the possibility of such relief and thus, retroactive application of § 241(a)(5) attached a new disability. The new disability attached to a completed transaction because Petitioner had applied for relief prior to IIRIRA's enactment. When such a retroactive effect exists, *Landgraf* requires us to apply our traditional presumption against retroactive application of the statute.

*Id.* at 1090-91 (citations omitted).

[6] As evident, the most salient fact in these cases is whether an alien filed for relief *before* IIRIRA's effective date and was awaiting the adjudication of that pending application when the government sought to reinstate an order of deportation under IIRIRA's reinstatement provision.[14]

---

[14]Although the Second and Eighth Circuits recently held that INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), is *not* impermissibly retroactive, they did so in materially distinguishable circumstances.

In *Herrera-Molina v. Holder*, 597 F.3d 128 (2d Cir. 2010), the Second Circuit denied a petition for review where the petitioner did not apply for

**E.**

**[7]** Like the petitioners in *Arevalo*, *Sarmiento Cisneros*, *Faiz-Mohammad*, and *Valdez-Sanchez*, Chay reentered without inspection and applied for relief from removal before IIRIRA took effect. The primary factual difference between those cases and Chay's situation is that Chay filed for asylum rather than adjustment of status. This difference is immaterial, because the central inquiry under *Landgraf* and *St. Cyr* is not the particular form of relief sought, nor whether that form of relief is discretionary, but whether the application of a new statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

**[8]** IIRIRA's new reinstatement provision dramatically expanded the scope of reinstatement while simultaneously barring individuals subject to reinstatement from virtually every form of immigration relief. *See, e.g., Morales-Izquierdo*, 486 F.3d at 494. We therefore follow our sister circuits and hold that the post IIRIRA reinstatement provision is impermissibly retroactive under *Landgraf* when applied to an immigrant, such as Chay, who applied for immigration relief prior to IIRIRA's effective date. Chay's petition for review is,

---

adjustment of status until *after* IIRIRA's effective date. *See id.* at 135 (distinguishing *Valdez-Sanchez*, *Faiz-Mohammad*, *Sarmiento Cisneros*, and *Arevalo*).

In *Molina Jerez v. Holder*, 625 F.3d 1058 (8th Cir. 2010), the government had fully adjudicated the petitioner's applications for asylum and NACARA relief *before* moving to reinstate a pre-IIRIRA removal order pursuant to the new INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). *See id.* at 1061-66. Applying *Fernandez-Vargas*, the Eighth Circuit concluded that, because DHS had adjudicated the petitioner's asylum claim prior to moving to reinstate removal, the application of INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), was not impermissibly retroactive. *Id.* at 1069-70.

accordingly, granted in part. The reinstatement order entered pursuant to INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) is vacated.[15]

**[9]** Although we cannot determine whether Chay is entitled to a grant of asylum relief, we can and do decide that he is entitled to an adjudication of his asylum application—pending now for eighteen years—on its merits. *See St. Cyr*, 533 U.S. at 307 ("Traditionally, courts recognized a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand."); *see also, e.g.*, *Arevalo*, 344 F.3d at 15 ("A right to seek relief is analytically separate and distinct from a right to the relief itself. Consequently, an alien is not precluded from having a vested right in a form of relief merely because the relief itself is ultimately at the discretion of the Executive Branch." (citations omitted)).

## III.

**[10]** Chay additionally argues that he has a right to have his eligibility for NACARA relief adjudicated on the merits before he may be removed. The government responds that, because DHS determined that Chay did not register for the so-called "*ABC* benefits" as required to be eligible for "special rule cancellation of removal" under NACARA § 203, *see* 8 C.F.R. § 1240.61, this court lacks jurisdiction over Chay's NACARA claim. We agree. IIRIRA expressly precludes federal courts from reviewing the agency's factual determination that an immigrant is ineligible for *ABC* benefits or special rule

---

[15]Our circuit has not decided whether INA § 241(a)(5), 8 U.S.C. § 1231(a)(5) allows the reinstatement of the BIA's 1990 order against Chay *after* his pending application for asylum has been adjudicated on its merits, and we express no view on the propriety of such action. *Compare Molina Jerez*, 625 F.3d at 1069-70 (indicating such a course of action raises no retroactivity concerns) *with Arevalo*, 344 F.3d at 16 ("The INS, of course, is free (again, consistent with this opinion) to resume the processing of the petitioner's application for adjustment of status and to go forward with a new round of removal proceedings.").

cancellation of removal under NACARA § 203. *See, e.g.*, *Lanuza v. Holder*, 597 F.3d 970, 971 (9th Cir. 2010) (per curiam) ("Section 309(c)(5)(C)(ii) [of IIRIRA] provides that '[a] determination by the Attorney General as to whether an alien satisfies the requirements of clause (i) is final and shall not be subject to review by any court.' Therefore, we lack jurisdiction to determine [petitioner's] statutory eligibility for NACARA § 203 relief." (citation omitted)); *Molina Jerez*, 625 F.3d at 1069 ("Whether [petitioner] registered for *ABC* benefits in a timely manner is a purely factual issue over which this court lacks jurisdiction." (citation omitted)). Accordingly, we deny Chay's petition for review to the extent that he asks us to remand to DHS to reevaluate his eligibility for special rule cancellation of removal under NACARA § 203.

## IV.

Following our sister circuits, we hold that the application of INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), is impermissibly retroactive when applied to immigrants who were deported but reentered and filed for immigration relief prior to IIRIRA's effective date. We therefore grant Chay's petition for review in part and vacate the reinstatement order entered against him. As we lack jurisdiction over the factual predicate of Chay's NACARA § 203 claim, we deny the petition for review in part.

This panel retains jurisdiction over all further appeals in this matter.

**Petition GRANTED in part, DENIED in part and REMANDED.**