**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTHA GUADALUPE MONTOYA,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 11-72483<br><br>Agency No.<br>A074-388-525<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2014—Pasadena, California

Filed March 7, 2014

Before: Jerome Farris, N. Randy Smith,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Farris

## SUMMARY[*]

### Immigration

The panel denied Martha Guadalupe Montoya's petition for review of the Department of Homeland Security's reinstatement pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 of her prior order of removal.

The panel held that application to Montoya of the Act's reinstatement statute was not impermissibly retroactive even though her brother had filed a Form I-130 petition for alien relative on her behalf before the Act's effective date. The panel wrote that the reinstatement provisions could permissibly be applied to Montoya because she took no pre-enactment action sufficient to create a vested right to apply for adjustment of status.

### COUNSEL

Charles Medina, Buena Park, California, for Petitioner.

Manuel A. Palau, United States Department of Justice, Washington, D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

FARRIS, Circuit Judge:

The petitioner, Martha Guadalupe Montoya, is a native and citizen of Mexico who illegally entered the United States and was ordered removed on January 25, 1996. In February 1996, she re-entered the United States illegally and remained there. On January 7, 1997, her brother—a United States citizen—filed a Form I-130 petition for a visa based on a family relationship, and it was approved. She was then placed on a waiting list to receive the visa.

During this time, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 took effect (on April 1, 1997). Pub. L. No. 104-208, div. C, 110 Stat. 3009–546. The Act changed the law regarding reinstatements of deportation or removal orders: it expanded the class of aliens eligible for this reinstatement and eliminated all forms of relief from the process. 8 U.S.C. § 1231(a)(5) ("the alien is not eligible and may not apply for any relief under this chapter"); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34 (2006); *see also Arevalo v. Ashcroft*, 344 F.3d 1, 5 (1st Cir. 2003) (enumerating differences between pre- and post-IIRIRA reinstatement provisions).

While on the waiting list but after the effective date of the Act, the Department of Homeland Security issued a reinstatement of Montoya's prior removal order (on August 24, 2011). She now petitions for review of this reinstatement, arguing that the application of the reinstatement statute in the Act is impermissibly retroactive with respect to her, as her Form I-130 was filed prior to the Act's effective date. The retroactive applicability of statutes is reviewed de novo.

*Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1326 (9th Cir. 2006). This Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D).

When, as here, Congress has not spoken explicitly with respect to a statute's temporal reach, we analyze retroactivity claims by assessing whether the application would (1) create new consequences for past acts or (2) cancel vested rights. *Fernandez-Vargas*, 548 U.S. at 37, 44 n.10. The retroactive applicability of 8 U.S.C. § 1231(a)(5) has been directly addressed by both the Supreme Court and the Ninth Circuit. *See id.* at 44–45 (holding that the provision did not create new consequences for past acts when applied to continuing violators of immigration laws); *Ixcot v. Holder*, 646 F.3d 1202, 1212–13 (9th Cir. 2011) (holding that alien's pending pre-Act application for relief prevented the retroactive application of the new reinstatement provisions). What distinguishes *Ixcot* from *Fernandez-Vargas* is that the alien in the former case affirmatively took pre-enactment action so as to change his legal status, while the alien in the latter case did nothing. *Fernandez-Vargas*, 548 U.S. at 45–46; *Ixcot*, 646 F.3d at 1212–13.

Whether a right has "vested" is therefore primarily determined by an individual's *actions*—the inquiry looks to whether a person has "availed" himself of the right, or "took action that enhanced [its] significance to him in particular." *Fernandez-Vargas*, 548 U.S. at 44 n.10. Still, any action taken must "elevate [the expectation] above the level of hope," and therefore actions that do little to substantially further the individual's expectation of relief are insufficient to create a vested right. *Id.*

The central question here is whether the filing and approval of a Form I-130 "Petition for Alien Relative" before the Act's effective date is sufficient to create a vested right to ultimately apply for adjustment of status relief. Approval of a Form I-130 is only the first step in the process towards a "family-based adjustment of status": (1) the I-130 is approved after being filed by a petitioning family member of the alien that is a U.S. citizen or permanent resident, (2) the alien is placed on a waiting list for a visa based on country of origin and year of application, and (3) when this is completed the alien may apply for adjustment of status and expect adjudication of that application. *Matter of Hashmi*, 24 I. & N. Dec. 785, 789 (BIA 2009). This circuit has not addressed a case in which only an I-130 has been filed before the Act's effective date, but the Fifth and Seventh Circuits have held that filing and approval of an I-130 is not sufficient to create a vested right. *Silva Rosa v. Gonzales*, 490 F.3d 403, 407–08 (5th Cir. 2007); *Labojewski v. Gonzales*, 407 F.3d 814, 822 (7th Cir. 2005).

We agree with the Fifth and Seventh Circuits: the mere filing and approval of a Form I-130 creates no vested right to apply for adjustment of status. This is informed by several considerations. First, it is not the alien who actually files the form, but rather the petitioning family member. *See Matter of Hashmi*, 24 I. & N. at 789. Next, it is not the alien who places herself on the waiting list, but rather the agency. *Id.* Finally, even after the (usually lengthy) waiting period has elapsed, it is still up to the alien to then affirmatively apply for adjustment. *Id.* ("Once the I-130 is approved and an immigrant visa is immediately available, the respondent *may* apply for adjustment of status") (emphasis added). Up until this last step—the application—the alien is but a passive recipient of the benefits of *other* parties' actions. Such

passive participation does not raise the alien's expectations "above the level of hope." *Fernandez-Varga*, 548 U.S. at 44 n.10. Here, Montoya's brother filed an I-130 on her behalf and the government placed her on the waiting list. She did not apply for adjustment of status. She took no pre-enactment action sufficient to create a vested right to apply for adjustment, and therefore the reinstatement provisions of the Act can be permissibly applied to her.

The petition is **DENIED**.