Dissent by Judge Navarro OPINION WATFORD, Circuit Judge: Under the Immigration and Nationality Act, the Department of Homeland Security (DHS) can seek to remove non-citizens from the United States through several different means. The most formal- process involves a hearing in immigration court before an immigration judge, at which the individual to be removed can contest the charges against him and request various forms of relief from removal. See 8 U.S.C. § 1229a. Today, however, most non-citizens are ordered removed through streamlined proceedings—expedited removal, administrative removal, and reinstatement of removal—that do not involve a hearing before an immigration judge. See Jennifer Lee Koh, Removal in the Shadows of Immigration Court, 90 S. Cal. L. Rev. 181, 183-84 (2017); Shoba Sivaprasad Wadhia, The Rise of Speed Deportation and the Role of Discretion, 5 Colum. J. Race & L. 1, 2-3 (2014). The proceedings are summary in nature and conducted by front-line immigration enforcement officers employed by DHS. This case involves administrative removal under 8 U.S.C. § 1228(b). A DHS officer ordered Eladio Gomez-Velazco, a native and citizen of Mexico, removed from the United States. Gomez-Velazco, contends that his due process rights were violated because he did not have counsel present at the outset of the removal process. We will assume that a violation occurred. The question we address is whether Gomez-Velazco must show that he was prejudiced by the yiolation. We conclude that he must and that he has not done so. We therefore deny his petitions for review. I Before discussing the facts of Gomez-Velazco’s case, it will help to begin with a brief overview of how administrative removal works. Section 1228(b) authorizes DHS to order a limited class of non-citizens removed from the country without affording them a hearing before an immigration judge, To invoke § 1228(b), DHS must establish that the individual to be removed: (1) is not a citizen of the United States; (2). has not been lawfully admitted for permanent residence; and (3) has been convicted of an aggravated felony, 8 U.S.C. § 1228(b)(1), (2); 8 C.F.R. § 238.1(b)(1). Proceedings under § 1228(b) are summary in nature because if DHS establishes those three predicates, the individual is conclusively presumed removable and categorically ineligible for most forms of discretionary relief from removal. 8 XJ.S.C. § 1228(b)(5), (c); see United States v. Arrieta, 224 F.3d 1076, 1080-81 (9th Cir. 2000). DHS commences administrative removal proceedings by serving you with a “Notice of Intent to Issue a Final Administrative Removal Order.” 8 C.F.R. § 238.1(b)(2). The notice must allege each of the three predicates necessary to trigger eligibility for administrative removal. § 238.1(b)(1), (b)(2)(i). The notice must-also advise you of certain rights, among them the right to be represented by counsel of your choosing at no expense to the government, the right to rebut the charges against you, and the right to request withholding of removal if you fear persecution or torture in the country to which you would be removed. § 238.1(b)(2)®. Upon service of the notice, you have ten days to file a response. § 238.1(c)(1). In the response, you can (among other things) attempt to rebut the charges, request an opportunity to review the government’s evidence, and request withholding of removal. Alternatively, you can waive the right to pursue any of these options and concede that you are removable as charged. If you do not file a response, or if you concede that you are removable as charged, a DHS official known as the deciding officer will issue a “Final Administrative Removal Order,” which for ease of reference we will simply call a removal order. § 238.1(d)(1). To allow an opportunity for judicial review, the order may not be executed for 14 days unless you waive-that waiting period in writing. 8 U.S.C. § 1228(b)(3); 8 C.F.R. § 238.1(f)(1). If the deciding officer issues a removal order and you fear persecution or torture in the country to which you would be removed, the deciding officer must refer the ease to an asylum officer to conduct a reasonable fear interview. 8 C.F.R. § 238.1(f)(3). If the asylum officer determines that your fear of persecution or tprture appears reasonable, the case is transferred to an immigration judge for a hearing to determine whether you are entitled to withholding of removal. §j 208.31(e). If the asylum officer deter-rhines that you do not have a reasonable fear of persecution or torture, you can s|eek review of that determination by ah immigration judge. § 208.31(g). But if the adverse reasonable fear determination is ultimately upheld, the removal order may then be executed. ! With that background in mind, we can turn to the facts of this case. DHS officers determined that Gomez-Velazeo, then confined in county jail, appeared to be eligible for removal under § 1228(b). Shortly after Gomez-Velazeo was released, DHS officers took him into custody pursuant to a war-jjant issued by the agency. The officers served him with a Notice of Intent to Issue a Final Administrative Removal Order. Í'he notice alleged that Gomez-Velazeo is . ot a citizen of the United States; that he ¿as not been lawfully admitted for permanent residence; and that he has been convicted of an aggravated felony, namely, second-degree rape under Oregon law. The notice advised Gomez-Velazeo of his right to contest the charges and his right to be represented by counsel óf his choosing at no expense to the government. The officers attempted to take a formal sworn statement from Gomez-Velazeo, but he refused to give one without his attorney present. The DHS officers knew Gomez-Velazeo had retained an attorney because two months earlier the attorney had notified them of Gomez-Velazco’s pending application for a U-visa. See 8 U.S.C. § 1101(a)(15)(U). Although Gomez-Velazeo refused to provide a sworn statement, he nonetheless admitted the allegations in the notice and conceded that he was removable as charged. He did not claim fear of persecution or torture- in Mexico, but he declined to waive the 14-day waiting period for execution of the removal order. He made each of these decisions without the benefit of counsel’s advice because his attorney was not present. ' Immediately after Gomez-Velazeo conceded that he was removable as charged, and before he had a chance to consult with his attorney, the deciding officer issued a removal order under § 1228(b). Because Gomez-Velazeo had not waived the 14-day waiting period, he was not removed from the country, and before the waiting period expired his attorney filed a petition for review in this court challenging the validity of the removal order. We issued a- stay of removal pending our resolution of the petition, which remains in effect. II Gomez-Velazeo argues that the DHS officers violated his right to counsel by pressuring him into conceding removability without the advice of counsel, even after he told them that he did not want to give a sworn statement until he could speak with his attorney. We have jurisdiction to review this constitutional claim under 8 U.S.C. § 1252(a)(2)(D). As mentioned at the outset, we will assume without deciding that the officers’ conduct violated Gomez-Velazco’s light to counsel. The question becomes whether Gomez-Velazco must show prejudice in order to prevail. The answer to that question requires a point of clarification as to the source of the right at issue. The Sixth Amendment does not afford a right to the assistance of counsel in immigration proceedings. Hernandez-Gil v. Gonzales, 476 F.3d 803, 806 (9th Cir. 2007). The right to be represented by counsel at one’s own expense is protected as an incident of the right to a fair hearing under the Due Process Clause of the Fifth Amendment. Biwot v. Gonzales, 403 F.3d 1094, 1098-99 (9th Cir. 2006); see also 8 U.S.C. § 1228(b)(4)(B) (“the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose”). Thus, an individual who asserts that he was denied the right to counsel in immigration proceedings is asserting that his right to due process was violated. As a general rule, an individual may obtain relief for a due process violation only if he shows that the violation caused him prejudice, meaning the violation potentially affected the outcome of the immigration proceeding. Hernandez-Gil, 476 F.3d at 808; Biwot, 403 F.3d at 1100. That rule rests on the view that the results of a proceeding should not be overturned if the outcome would have been the same even without the violation. Gomez-Velazco contends that the rule should be different when a due process violation is predicated on denial of the right to counsel. In that context, he urges, prejudice should be conclusively presumed and automatic reversal should follow. There is some support for the rule Gomez-Velazco advocates. In cases involving removal proceedings before an immigration judge, we have held that requiring an individual to proceed with the merits hearing without the assistance of counsel violates due process, absent a valid waiver of the right to counsel. See, e.g., Hernandez-Gil, 476 F.3d at 806-08; Tawadrus v. Ashcroft, 364 F.3d 1099, 1103-06 (9th Cir. 2004). And in Montes-Lopez v. Holder, 694 F.3d 1085 (9th Cir. 2012), we carved out an exception to the general rule requiring a showing of prejudice. There we held that an individual who is wrongly denied the assistance of counsel at the merits hearing need not show prejudice in order to prevail. Id. at 1090. Prejudice in that context is conclusively presumed and automatic reversal is required. The rule we adopted in Montes-Lopez is based in part on the practical difficulties one would face in trying to prove that the outcome of the merits hearing would have been different had counsel been able to assist. Id. at 1092. In most cases it would be next to impossible to determine what the evidentiary record would have looked like had counsel been present. The same practical difficulties explain why, in the Sixth Amendment context, a showing of prejudice is not required when the defendant is denied counsel (or wrongly denied counsel of choice) throughout the entire criminal proceeding. See United States v. Gonzalez-Lopez, 548 U.S. 140, 148-50, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). In that context, too, it would usually be impossible to determine what different decisions counsel (or counsel of choice) might have made, and what impact those decisions might have had on the outcome of the proceeding. Id. at 150-51, 126 S.Ct. 2557. Given “the difficulty of assessing the effect of the error,” id. at 149 n.4, 126 S.Ct. 2557, automatic reversal is required. Even in the Sixth Amendment context, though, not all violations of the right to counsel are treated as structural errors mandating automatic reversal. If the right to counsel has been wrongly denied only at a discrete stage of the proceeding, and an assessment of the error’s effect can readily be made, then prejudice rmjst be found to warrant reversal. For example, the Supreme Court has held that denial of counsel at the preliminary hearing stage.-is subject to harmless error review rather than an automatic reversal rule. Coleman v. Alabama, 399 U.S. 1, 10-11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Ard when the government obtains evi-dejnce at certain pre-trial stages of the case in violation of the right to counsel, admission of that evidence at trial is also subject to harmless error review. See, e.g., Satterwhite v. Texas, 486 U.S. 249, 258, 103 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (denial of right to counsel at court-ordered psychiatric examination); Milton v. Wainmight, 407 U.S. 371, 372, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) (denial of right to counsel dujring post-indictment interactions with undercover police officer); United States v. Wade, 388 U.S. 218, 242, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (denial of right to counsel at pre-trial line-up). jin our view, the rationale supporting the automatic reversal rule does not extend to the circumstances we confront in this case. Gomez-Velazco was not denied the assistance of counsel throughout the entirety of the administrative'removal process, which cojmmences with service of the Notice of Injtent to Issue a Final Administrative Re-mbval Order and' ends with execution of the order.' He lacked Counsel at one discrete stage of the process—the point of his initial interaction with DHS officers. That whs, to be sure, an important stage because he had to decide whether to contest thje charges against him and whether to request withholding of removal, decisions that turn on potentially complicated factual and legal issues which virtually all lay people need the assistance of counsel to analyze intelligently. See Koh, supra, 90 S. Cal. L. Rev. at 211—13. Nonetheless, we think the effect of coun--sel’s absence during the initial interaction with DHS officers can readily be assessed, at least in cases like this one, in which the individual does not waive the 14-day waiting period and is allowed to consult with counsel before the removal order is executed. In that scenario, we are not forced to speculate about the different decisions counsel might have made had-she been present, for counsel can act on those decisions after issuance of the removal order and remedy any damage done by her client’s un-counseled admissions or waivers. Take the two most common admissions or waivers that occur. If the individual admits the allegations in the notice and concedes removability, as Gomez-Velazco did here, the' lawyer can still file a response asserting any valid grounds for contesting removability within the ten-day period permitted under 8. C.F.R. § 238.1(c)(1). We doubt DHS would refuse to consider the response on the theory that the individual’s earlier -un-counseled concession of removability is somehow irrevocable. But even if the agency took that dubious position, a reviewing court would be able to assess whether the grounds asserted raise a plausible basis for contesting removability, and thus could determine whether counsel’s absence during the initial interaction with DHS officers caused prejudice. And if the. individual waives -the right to request withholding of removal despite fearing persecution or torture in the country to which he would be removed, the lawyer can still request a reasonable fear determination, since that does not occur until after issuance of the removal order in any event. § 238.1(f)(3). In sum, we see no reason to conclusively presume prejudice when an individual is denied the right to counsel during his initial interaction with DHS officers, provided the individual is able to consult with counsel before the removal order is executed. In that scenario, we can determine what the evidentiary record would have looked like had the violation not occurred; unlike the scenario in which counsel is precluded from participating in the merits hearing before an immigration judge. And we can thus assess what prejudicial effect* if any, counsel’s absence had on the outcome of the proceedings. Having concluded that Gomez-Ve-lazco must show prejudice to prevail, we turn to whether he has made that showing here. As just noted, he might have been able to show prejudice had he attempted to contest the facts rendering him removable yet been foreclosed from doing so by virtue of his earlier un-counseled admissions. But he has never attempted to contest the charges against him, even after having an opportunity to consult with counsel, so he cannot contend that his un-counseled admissions cost him the chance to raise plausible grounds for contesting removal. Nor can he claim prejudice by virtue of his un-counseled waiver of the right to request withholding of removal, since he was ultimately given a reasonable, fear interview and allowed to make the case that he should be granted withholding of removal. Gomez-Velazco asserts only one other theory of prejudice, which relates to the recent denial of his U-visa application. He contends that if counsel had been present during his initial interaction with DHS officers, his attorney could have requested a stay of the proceedings and thereby prevented the removal order from being issued in the first place. He argues that he suffered prejudice because the very issuance of the removal order negatively influenced the agency’s consideration of his U-visa application and contributed to the decision to deny it. There are at least two flaws in ‘this argument: The first is that Gomez-Velazco provides nothing to support his assertion that the mere issuance of a removal order negatively affects the agency’s consideration of a U-visa application. We have found nothing in DHS regulations or policy guidance to suggest that is the case, and we know that issuance of a removal order does not preclude an individual from obtaining a U-visa, The agency’s regulations specifically contemplate the granting of a U-visa application even after issuance of a removal order. They provide that upon approval of the application the removal order “will, be deemed canceled by operation of law” as of the date of approval. 8 C.F.R. § 214.14(c)(5)(i); see United States v. Cisneros-Rodriguez, 813 F.3d 748, 761 (9th Cir. 2015). The second flaw in Gomez-Velazeo’s argument is that the agency’s written explanation for why it denied his U-visa application does not rely on issuance of the removal order as a negative factor. To be eligible for a U-visa, Gomez-Velazco needed to obtain a waiver of inadmissibility, and to obtain that he needed to persuade the agency .that “it is in the public or national interest” to allow him to remain in the United States. 8 C.F.R. § 212.17(b)(1). The agency explained that it declined to grant a waiver of inadmissibility because his criminal record indicated that he posed a risk to public safety. In support of that conclusion, the agency cited Gomez-Velazco’s conviction for second-degree rape, an especially serious offense' because the victim was 13 years old. The agency also cited his multiple violations of the probationary conditions imposed for that conviction and his multiple arrests for other offenses. Given this record of criminal wrongdoing, the agency could not conclude that a favorable exercise of its discretion was warranted. That outcome is not surprising, as the agency’s regulations provide that it will grant a waiver of inadmissibility to applicants convicted of violent or dangerous crimes only in “extraordinary circumstances.” § 212.17(b)(2). Nothing .in the agency’s decision turned on the fact that a removal order had been issued. * * * In the circumstances of this case, Gomez-Velazco was required to show prejudice in order to prevail on his due process claim. Although he may have been improperly denied the right to counsel during his initial interaction with DHS officers, he hps made no showing that the denial of that right caused him any prejudice. PETITIONS FOR REVIEW DENIED.