**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 31 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| MARISOL OLIVA ORELLANA, | No. 23-1324 |
| Petitioner, | Agency No. A098-981-322 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Department of Homeland Security

Submitted May 17, 2024[**]
San Francisco, California

Before: LEE and BRESS, Circuit Judges, and KANE, District Judge.[***]

Marisol Oliva Orellana, a native and citizen of Honduras, seeks review of the

Department of Homeland Security's (DHS) Final Administrative Removal Order

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Yvette Kane, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

(FARO). The FARO concluded that, as a noncitizen without lawful admission for permanent residence, Orellana was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) based upon her conviction for an aggravated felony crime of violence and an attempt or conspiracy to commit an offense as defined in 8 U.S.C. §§ 1101(a)(43)(F) and (U), respectively. We have jurisdiction under 8 U.S.C. § 1252(a)(1),[1] and we deny the petition.

In April 2023, Orellana was convicted in Nevada of attempted battery with substantial bodily harm. *See* Nev. Rev. Stat. §§ 200.481, 193.153. On June 6, 2023, DHS commenced expedited removal proceedings, issuing a Notice of Intent to Issue a Final Removal Order (NOI). Although an alien has 10 days to respond to a NOI, *see* 8 C.F.R. § 238.1(b)(2)(i), a DHS field officer signed a FARO on June 6, the same day the NOI was issued. Then, ten days later, on the morning of June 16, 2023, DHS issued its second and operative FARO.

1. DHS correctly concluded that Orellana's Nevada conviction for attempted battery with substantial bodily harm is an aggravated felony crime of violence,

---

[1] Under 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction over "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. §] 1227(a)(2)(A)(iii), (B), (C), or (D) . . . ." We, however, retain jurisdiction to review "constitutional claims or questions of law," *id.* § 1252(a)(2)(D), including whether Orellana's due process rights were violated and whether she was convicted of an aggravated felony and is thus deportable under § 1227(a)(2)(A)(iii).

rendering her removable under § 1227(a)(2)(A)(iii).  Orellana's contrary arguments are foreclosed by *United States v. Fitzgerald*, 935 F.3d 814, 816 (9th Cir. 2019) (per curiam), in which we held that a conviction for attempted battery with substantial bodily harm under Nev. Rev. Stat. §§ 200.481(2)(b) and 193.330 (currently Nev. Rev. Stat. § 193.153) is categorically a crime of violence because it "has as an element the use, attempted use, or threatened use of physical force." *Fitzgerald*, 935 F.3d at 816–19.

Although *Fitzgerald* construed the Sentencing Guidelines, "there is no meaningful distinction for the purposes of this petition" between the Guidelines definition of crime of violence and the definition in 8 U.S.C. § 1101(a)(43)(F). *Nieves-Medrano v. Holder*, 590 F.3d 1057, 1058 (9th Cir. 2010), *abrogated on other grounds as recognized in Solorio-Ruiz v. Sessions*, 881 F.3d 733, 736 (9th Cir. 2018); *see* 8 U.S.C. § 1101(a)(43)(F) (adopting the definition of crime of violence in 18 U.S.C. § 16); *compare* 18 U.S.C. § 16 ("The term "crime of violence" means . . . an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . .") *with Fitzgerald*, 935 F.3d at 816 ("[W]e ask whether the Nevada crime of attempted battery with substantial bodily harm 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" (citation omitted)).

Orellana urges that *Fitzgerald* is "clearly irreconcilable" with *Borden v. United States*, 593 U.S. 420, 423 (2021) (holding that an offense is not a "violent felony" and thus not a "crime of violence" if "it requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge"). We find no such tension. Orellana was convicted of *attempted* battery with substantial bodily harm, which "requires that the defendant act with the *specific intent* both to commit battery and to bring about substantial bodily harm." *Fitzgerald*, 935 F.3d at 817 (emphasis added). And because the definition of attempt under Nevada law "is coextensive with the federal definition," Nevada's definition of attempt does not "sweep[] more broadly than" 18 U.S.C. § 16(a)'s definition of "attempted use . . . of physical force." *See id.* at 817 n.1 (internal quotation marks and citation omitted).

2. Orellana contends that DHS violated her due process rights by issuing the two FAROs before the 10-day NOI response window concluded, and that these premature removal orders deprived her of her right to counsel in her expedited removal proceedings. We conclude that DHS prematurely issued the June 16 FARO, denying Orellana the 10-day window to respond to the NOI. The government admits that it prematurely produced a FARO on June 6 but contends that it corrected its error by issuing the operative FARO on June 16. But the latter order was still issued too soon, as Orellana had until the end of the calendar day to rebut the charges in the NOI. *See* 8 C.F.R. § 238.1(b)(2)(i).

Despite DHS's violation of its regulation, Orellana still must show actual prejudice to be entitled to relief. *See Gomez-Velazco v. Sessions*, 879 F.3d 989, 995 (9th Cir. 2018). Generally, "an individual may obtain relief for a due process violation only if [s]he shows that the violation caused [her] prejudice, meaning the violation potentially affected the outcome of the immigration proceeding." *Id.* at 993. But "an individual who is wrongly denied the assistance of counsel at [a] merits hearing need not show prejudice in order to prevail." *Id.* (citing *Montes-Lopez v. Holder*, 694 F.3d 1085, 1090 (9th Cir. 2012)). But even assuming for argument's sake that Orellana was denied assistance of counsel because of DHS's failure to give her the required 10 days to respond, this carveout does not help Orellana, as it does not extend to circumstances in which a noncitizen has been deprived of a right to counsel during a "discrete stage" of an administrative review process. *Id.* at 994. There, unlike at merits hearings, the court can readily assess the effect of counsel's absence in the FARO proceedings. *See id.* at 994.

Orellana's efforts to distinguish *Gomez-Velazco* are unpersuasive. Much like Gomez-Velazco, Orellana ultimately retained counsel, received legal advice, and petitioned for review before the execution of her removal order. *See id.* at 992–94. Furthermore, here, as in *Gomez-Velazco*, prejudice can easily be evaluated simply on the record before us: The June 16 FARO indicated Orellana's intent to petition for review; and the two asserted bases for her rebuttal—(1) that her June 6 FARO

was issued in error, and (2) that her crime of conviction does not constitute an aggravated felony crime of violence—are properly before this court. Indeed, they are the only arguments she raises on appeal. We can readily "determine what the evidentiary record would have looked like had the violation not occurred, unlike the scenario in which counsel is precluded from participating in the merits hearing before an immigration judge." *Id.* at 995.

Orellana's due process claim fails because she has not shown that she was prejudiced by the premature issuance of the June 16 FARO. She vaguely asserts that her denial of counsel forestalled her ability to "present[] different, meritorious arguments that [she] was precluded from making due to DHS' actions." But these threadbare assertions are insufficient to establish prejudice. Tellingly, on appeal, she presses the same arguments raised in her NOI rebuttal. Finally, Orellana suggests that because she is a beneficiary of an approved I-130 Petition and an approved Form I-212, the ill-timed FARO denied her the opportunity to seek adjustment of status if placed in Immigration and Nationality Act § 240 proceedings. *See* 8 U.S.C. § 1229a. But a grant of adjustment of status is purely discretionary, and an alien has no constitutionally protected liberty interest in a grant of discretionary relief. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 665–66 (9th Cir. 2016). And because the record is devoid of evidence that Orellana would be eligible for adjustment of status, any alleged prejudice is merely speculative.

**PETITION DENIED.**[2]

---

[2] We grant the two evidentiary motions (**Dkt. Nos. 18, 26**), and deny the emergency motion for a stay of removal, **Dkt. Nos. 2, 9.** The temporary stay of removal shall remain in place until the mandate issues.

23-1324