**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALFONSO VERDUZCO RUIZ, AKA Antonio Ugarte-Verduzco, AKA Juan Pablo Valenzuela-Mercado, | No.18-71787 |
| | Agency Nos. A095-176-705 A078-241-939 |
| *Petitioner*, | |
| v. | |
| PAMELA BONDI, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Department of Homeland Security

Submitted February 18, 2026[*]
El Centro, California

Filed April 1, 2026

Before: Richard C. Tallman and John B. Owens, Circuit
Judges, and Ruth Bermudez Montenegro,[**] District Judge.

Opinion by Judge Tallman

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Ruth Bermudez Montenegro, United States District Judge for the Southern District of California, sitting by designation.

## SUMMARY***

### Immigration

The panel denied Alfonso Verduzco Ruiz's petition for review of an order of the Department of Homeland Security (DHS) reinstating his prior order of removal, holding that: (1) it was not impermissibly retroactive to apply the reinstatement provision to him; (2) an alien must show prejudice to obtain relief for a due process violation based on denial of any right to counsel that may exist in reinstatement proceedings; and (3) Verduzco Ruiz failed to establish such prejudice.

Verduzco Ruiz contended that it was impermissibly retroactive to apply the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's (IIRIRA) expanded reinstatement provision, 8 U.S.C. § 1231(a)(5), to him because he was the beneficiary of a visa petition approved before IIRIRA went into effect. The panel rejected that argument, reasoning that, because Verduzco Ruiz took no affirmative step to adjust his status before IIRIRA went into effect, he had no vested right for IIRIRA to cancel.

Verduzco Ruiz also contended that his due process right to counsel was violated when DHS did not invite his counsel to attend reinstatement proceedings. The panel rejected Verduzco Ruiz's argument that the court should presume prejudice, citing *Gomez-Velazco v. Sessions*, 879 F.3d 989 (9th Cir. 2018), in which the court held that an alien was required to show prejudice as to the denial of counsel in

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

expedited removal proceedings because prejudice could be readily assessed in that context. The panel concluded that the same logic extended to reinstatement.

Verduzco Ruiz argued that he was prejudiced because his counsel could have: (1) told DHS that the reinstatement provision did not apply because he began his quest for immigration relief in 1992; and (2) convinced the officers to exercise their discretion to put him in full removal proceedings rather than reinstatement proceedings. The panel concluded that these theories were based on faulty premises and too speculative to establish the requisite prejudice.

## COUNSEL

Gary Finn, Law Office of Gary Finn, Indio, California, for Petitioner.

Andrew N. O'Malley, Senior Litigation Counsel; Marie Vanderbilt Robinson; Cindy S. Ferrier, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

TALLMAN, Circuit Judge:

Alfonso Verduzco Ruiz petitions for review of the Department of Homeland Security's (DHS) reinstatement of his prior removal order. He raises two issues on appeal: (1) that it is impermissibly retroactive to apply the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's (IIRIRA) reinstatement provision to him because he was the beneficiary of an I-130 visa petition approved before IIRIRA went into effect; and (2) that his right to counsel was violated when DHS did not invite his counsel to attend reinstatement proceedings. We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition.

## I

Verduzco Ruiz is a citizen and national of Mexico. In 1992, his mother applied for an immigrant visa for him by filing an I-130, *Petition for Alien Relative*.[1] This petition was approved in 1993. It is not clear where Verduzco Ruiz was living at that time or if he ever received a visa, but he did not apply for lawful permanent residence after the petition was approved.

---

[1] On appeal, Verduzco Ruiz has submitted materials and made assertions that are not in the administrative record. While we "decide the petition only on the administrative record on which the order of removal is based," 8 U.S.C. § 1252(b)(4)(A), we incorporate extra-record information into our factual description "for context and informational purposes only." *Castro-Cortez v. INS*, 239 F.3d 1037, 1040 n.2 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). We base our decision solely on the administrative record.

In 2000, Verduzco Ruiz was deemed inadmissible at the United States-Mexico border, ordered removed, and was in fact removed. He returned to the United States without inspection on an unknown date thereafter, but it appears to have been shortly after his removal.

In 2017, Verduzco Ruiz's wife filed a second I-130 on his behalf, which was approved. He applied for adjustment of status shortly thereafter. An interview regarding his application was scheduled for February 22, 2018. When he arrived at that appointment with his attorney, a DHS officer told him he was being investigated for false testimony on his application. After Verduzco Ruiz admitted he was illegally present in the United States and had been previously removed, his attorney advised him to remain silent.

Verduzco Ruiz was arrested and transported to a DHS office for processing. Once there, he was advised of his right to counsel. He declined to answer questions about his illegal re-entry and did not claim that he was afraid of persecution or torture in Mexico. The officer reinstated the removal order.

Verduzco Ruiz petitioned this Court for review of the reinstated order. DHS then discovered that the "Acknowledgement and Response" section on the reinstated order had been left blank, cancelled the removal order, and moved to dismiss the case, which we granted.

DHS called Verduzco Ruiz back to its office in May 2018 to reinstate the order again. He was advised of his rights (including the right to consult with an attorney and have one present) and the purpose of the meeting, acknowledged that he understood both, and declined to make a statement or sign the "Acknowledgement and Response." DHS again reinstated the removal order. Verduzco Ruiz

timely appealed, and we stayed the reinstated removal order pending our review.

## II

We review de novo "whether an application of IIRIRA is impermissibly retroactive" and whether an alien's right to counsel has been violated. *Ixcot v. Holder*, 646 F.3d 1202, 1206 (9th Cir. 2011) (citation omitted) (retroactivity); *Montes-Lopez v. Holder*, 694 F.3d 1085, 1088 (9th Cir. 2012) (right to counsel).

## A

Verduzco Ruiz first contends that it is impermissibly retroactive to apply IIRIRA's reinstatement provision, codified at 8 U.S.C. § 1231(a)(5), to him because he began the process of legalizing his status in the United States before IIRIRA went into effect.[2]  A law is impermissibly retroactive when applying it would cancel rights that vested before the law's effective date. *Montoya v. Holder*, 744 F.3d 614, 616 (9th Cir. 2014).  Verduzco Ruiz argues that he had vested rights based on the I-130 his mother submitted on his behalf in 1992.  Because that petition was submitted and approved before IIRIRA's effective date, Verduzco Ruiz argues that IIRIRA's revised reinstatement provision, which expanded the class of aliens eligible for reinstatement to include him and eliminated most forms of relief from removal, cannot be applied to him.

We considered and rejected this argument in *Montoya*, which was based on the same material facts: an I-130 was

---

[2] IIRIRA went into effect on April 1, 1997, which was "the first day of the first month beginning more than 180 days after" it was enacted. *Fernandez-Vargas*, 548 U.S. at 35 (quoting IIRIRA, Pub. L. No. 104-208, § 309(a), 110 Stat. 3009-625).

submitted and approved on the alien's behalf, but the alien had not applied for adjustment of status, before IIRIRA went into effect. *Id.* at 615. When a prior removal order was reinstated, the alien argued that it was impermissibly retroactive to apply IIRIRA's reinstatement provision to her because her I-130 was filed before IIRIRA's effective date. *Id.* at 616. However, we held that applying IIRIRA to her was not impermissibly retroactive because "the mere filing and approval of a Form I-130 creates no vested right to apply for adjustment of status." *Id.*

A right is vested only if the alien affirmatively acts to "substantially further the individual's expectation of relief." *Id.* There is a three-step process to become a lawful permanent resident based on a family relationship: (1) the alien must be the beneficiary of an approved I-130 petition; (2) an immigrant visa must be available for the alien; and (3) once a visa is available, the alien must apply for adjustment of status. *Id.* Up to the third and final step, "the alien is but a passive recipient of the benefits of other parties' actions": a family member files the petition on the alien's behalf, and the agency puts the alien on the waiting list for a visa. *Id.* at 616–17 (citation modified). The alien's first affirmative act is to apply for adjustment of status. *Id.* Until the alien does so, there is no vested right for immigration relief. *Id.*; *accord Ixcot*, 646 F.3d at 1212–13 (holding that IIRIRA's "reinstatement provision is impermissibly retroactive . . . when applied to an immigrant . . . who applied for [asylum] prior to IIRIRA's effective date"). Because Verduzco Ruiz took no affirmative step to adjust his status before IIRIRA went into effect, he had no vested right for IIRIRA to cancel.

Verduzco Ruiz tries to limit *Montoya*'s holding, arguing that we held only that an approved I-130 "creates no vested

right to apply for *adjustment of status*." *Montoya*, 744 F.3d at 616 (emphasis added). He contends that he may still have a vested right to acquire lawful status through consular processing.

This argument fails because there is no material distinction between consular processing and adjustment of status. To become a lawful permanent resident based on a family relationship, the first two steps are the same: (1) be the beneficiary of an approved I-130, and (2) have an immigrant visa available. *See Consular Processing*, U.S. Citizenship & Immigr. Servs. (July 20, 2023), https://perma.cc/3RRK-BL9R. The difference arises at the third step. If the alien is already in the United States, he applies for adjustment of status through DHS; if not, he applies for consular processing through the Department of State. *Id.*; *see also I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs. (Dec. 29, 2025), https://perma.cc/C3MY-R92V. *Montoya*'s reasoning applies with equal force to consular processing: there is no vested right until the alien affirmatively applies for lawful status.

Verduzco Ruiz did not apply for lawful status before IIRIRA went into effect, so he had no vested right. Thus, we hold that it is not impermissibly retroactive to apply IIRIRA's expanded reinstatement provision to him.

## B

Verduzco Ruiz next argues that, even if he was properly subject to reinstatement proceedings, the reinstatement order should be vacated because he was denied a right to counsel at the May 2018 meeting where DHS reinstated his prior removal order. There is no statutory right to counsel at the initial stage of reinstatement proceedings, where an

immigration officer determines if a prior removal order should be reinstated. *Zuniga v. Barr*, 946 F.3d 464, 469 n.8 (9th Cir. 2019) (per curiam). Thus, his claimed right to counsel sounds in due process. *Gomez-Velazco v. Sessions*, 879 F.3d 989, 993 (9th Cir. 2018) ("[A]n individual who asserts that he was denied the right to counsel in immigration proceedings is asserting that his right to due process was violated.").

To show a due process violation, Verduzco Ruiz must establish that (1) a right was violated, and (2) he was prejudiced by that violation. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc). We need not decide if Verduzco Ruiz's due process rights were violated because he has not demonstrated that he was prejudiced by the absence of counsel. *Accord Tamayo-Tamayo v. Holder*, 725 F.3d 950, 954 (9th Cir. 2013).

**1**

Ordinarily, "an individual may obtain relief for a due process violation only if he shows that the violation caused him prejudice, meaning the violation potentially affected the outcome of the immigration proceeding." *Gomez-Velazco*, 879 F.3d at 993. But in certain circumstances, prejudice is conclusively presumed when an alien is denied his right to counsel. *Montes-Lopez*, 694 F.3d at 1093–94. Verduzco Ruiz argues we should presume prejudice here.

In *Montes-Lopez*, we held that an alien in removal proceedings need not show prejudice when he is denied counsel at the merits hearing before an immigration judge (IJ). *Id.* at 1090–94. This rule "is based in part on the practical difficulties one would face in trying to prove that the outcome of the merits hearing would have been different had counsel been able to assist." *Gomez-Velazco*, 879 F.3d

at 993. After all, an alien has significant rights "to examine the evidence against [him], to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government" at the merits hearing. 8 U.S.C. § 1229a(b)(4)(B). We have recognized that "[i]n most cases it would be next to impossible to determine what the evidentiary record would have looked like, . . . what different decisions counsel . . . might have made, and what impact those decisions might have had on the outcome" of a contested proceeding. *Gomez-Velazco*, 879 F.3d at 993. Given those difficulties, we concluded that it was appropriate to conclusively presume prejudice when the right to counsel is denied at the merits hearing. *See id.*

However, we have cabined the *Montes-Lopez* exception, requiring proof of prejudice when counsel was denied in settings other than the merits hearing. In *Gomez-Velazco*, we considered a denial of counsel in the context of expedited removal under 8 U.S.C. § 1228(b). *Id.* at 991. In expedited removal proceedings, the alien is not entitled to a hearing before an IJ. *See* § 1228(b); 8 C.F.R. § 238.1. Instead, these "summary" proceedings require DHS to establish that the alien: "(1) is not a citizen of the United States; (2) has not been lawfully admitted for permanent residence; and (3) has been convicted of an aggravated felony." *Gomez-Velazco*, 879 F.3d at 991. If those predicates are established, the alien "is conclusively presumed removable and categorically ineligible for most forms of discretionary relief from removal." *Id.*

The expedited removal process starts with DHS serving a "Notice of Intent to Issue a Final Administrative Removal Order" (FARO), which identifies the three predicates and advises the alien of applicable rights. *Id.* The alien has ten days to respond in writing, in which the alien can attempt to

rebut the charges, ask to review the government's evidence, request withholding of removal, or concede removability. *Id.* If the DHS officer determines the alien is removable, the officer issues a FARO. *Id.* at 991–92. To allow for judicial review, the FARO may not be executed for fourteen days unless the alien waives the waiting period. *Id.* at 992.

In *Gomez-Velazco*, DHS officers served the Notice of Intent on the alien and attempted to take a statement, which he refused to give without his attorney present. *Id.* Although he did not make a statement, he conceded removability and declined to waive the waiting period. *Id.* Because the alien's attorney was not present, he made those decisions without the benefit of counsel's advice. *Id.* His attorney filed a petition for review with us during the fourteen-day waiting period. *Id.*

The alien made the same argument that Verduzco Ruiz makes here: that under *Montes-Lopez*, prejudice should be presumed based on denial of the right to counsel. *Id.* at 993. Acknowledging that the initial interaction in expedited removal proceedings is "an important stage because [the alien] had to decide whether to contest the charges against him and whether to request withholding of removal," we held that the *Montes-Lopez* exception did not apply. *Id.* at 994. Unlike when counsel is absent from the merits hearing in full removal proceedings, "the effect of counsel's absence during the initial interaction with DHS officers [during expedited removal proceedings] can readily be assessed" when the alien "is allowed to consult with counsel before the removal order is executed." *Id.* at 994. Because the alien has an opportunity to consult with counsel, it is possible for the alien to demonstrate "what the evidentiary record would have looked like" had counsel been present at the initial interaction. *Id.* at 995. This affords us the ability to "assess

what prejudicial effect, if any, counsel's absence had on the outcome of the proceedings." *Id.*

We have not yet expressly decided whether prejudice is presumed for the denial of counsel at reinstatement proceedings, which are at issue here. However, in a case decided nine months after *Montes-Lopez*, we resolved a due process challenge for denial of the right to counsel in reinstatement proceedings based on the alien's failure to show prejudice. *See Tamayo-Tamayo*, 725 F.3d at 954. As we neither cited nor discussed *Montes-Lopez* in *Tamayo-Tamayo*, we take the opportunity here to explain why it is appropriate to follow the general rule of requiring the alien to show prejudice to obtain relief for denial of counsel in reinstatement proceedings.

In reinstatement proceedings, unlike full removal proceedings, there is no hearing before an IJ. 8 C.F.R. § 241.8(a). Instead, a DHS officer must determine if three factual predicates are met: "that (1) petitioner is an alien, (2) who was subject to a prior removal order, and (3) who illegally reentered the United States." *Morales-Izquierdo*, 486 F.3d at 495. If the officer determines they are, the officer gives the alien written notice of the determination and affords the alien an opportunity to make a statement contesting the determination before reinstating the removal order. 8 C.F.R. § 241.8(b). If the order is reinstated, the alien still has an opportunity to pursue withholding of removal based on a reasonable fear of persecution or torture in the designated country of removal. *Id.* § 241.8(e).

Reinstatement proceedings are very similar to the expedited removal proceedings at issue in *Gomez-Velazco*. Both turn on a DHS officer's determination regarding three narrow factual predicates, both afford an opportunity to

make a statement contesting those findings, and both afford an opportunity to seek withholding of removal. The notable differences are that reinstatement proceedings (1) do not specify how long the alien has to provide a statement, unlike the ten days guaranteed in expedited removal proceedings, and (2) do not guarantee a waiting period before the reinstated order is executed, unlike expedited removal proceedings. *Compare id.* § 241.9(a) (directing DHS to seek removal "immediately or as promptly as the circumstances permit"), *with* § 238.1(f)(1).

However, those differences do not materially distinguish reinstatement proceedings from expedited removal proceedings, particularly not in Verduzco Ruiz's circumstances. At the time of his May 2018 meeting with DHS, he had been in reinstatement proceedings for about three months. He had already—in the presence of his attorney—admitted to being illegally present after a prior removal. And his attorney was actively representing him on a petition for review before us, with a stay of the removal order in effect. As in *Gomez-Velazco*, Verduzco Ruiz had ample opportunity "to consult with counsel before the removal order [was] executed." *Gomez-Velazco*, 879 F.3d at 995. This afforded him the chance, which he did not take, to develop a record challenging the factual predicates for removal or supporting withholding.

Even in a case where proceedings were not prolonged as they were here, the reinstatement regulation does not require the DHS officer to make a determination immediately. *See* 8 C.F.R. § 241.8(b). The officer is free to afford an alien a reasonable opportunity to consult counsel and submit a response if the alien indicates an intent to do so. Thus, the logic of *Gomez-Velazco* extends here. Accordingly, we hold that an alien must show prejudice to obtain relief for a due

process violation based on denial of any right to counsel that may exist in reinstatement proceedings.

## 2

To show prejudice, Verduzco Ruiz must demonstrate that there were "plausible scenarios in which the outcome of the proceedings would have been different" had his counsel been present. *Tamayo-Tamayo*, 725 F.3d at 954 (citation omitted). "[T]he results of a proceeding should not be overturned if the outcome would have been the same even without the violation" of the right to counsel. *Gomez-Velazco*, 879 F.3d at 993.

Verduzco Ruiz neither contests the factual predicates to reinstate his removal order nor claims that he fears persecution or torture in Mexico. Instead, he argues that he was prejudiced because his counsel could have advocated on his behalf: (1) by telling DHS that IIRIRA's reinstatement provision did not apply because he began his quest for immigration relief in 1992, and (2) by convincing the officers to exercise their discretion to put him into full removal proceedings rather than reinstatement proceedings. Neither theory has merit.

First, as discussed above, IIRIRA's reinstatement provision applies to Verduzco Ruiz because he had no vested right to immigration relief before IIRIRA went into effect. Thus, his first theory rests on the belief that the outcome plausibly could have been different had his attorney presented an incorrect legal argument to the immigration officer. This is "too speculative to establish the requisite prejudice." *Bingham v. Holder*, 637 F.3d 1040, 1047 (9th Cir. 2011).

Second, while it is true that "DHS has the discretion to overlook a noncitizen's prior removal order rather than reinstate it," there is no "right to present an argument that may sway DHS in the exercise of its purely discretionary authority to overlook a prior removal order." *Iraheta-Martinez v. Garland*, 12 F.4th 942, 953–54 (9th Cir. 2021). This theory rests on Verduzco Ruiz being denied something to which he is not entitled. In addition, it is pure speculation to believe that DHS would have "decline[d] to reinstate a prior removal order whose factual predicates are clear." *Id.*

In short, Verduzco Ruiz has not shown plausible grounds to believe that the outcome of the reinstatement proceedings would have been different had his counsel been present. Accordingly, we hold that he is not entitled to relief because he was not prejudiced by his attorney's absence from the reinstatement proceedings.

## III

We conclude that: (1) it is not impermissibly retroactive to apply IIRIRA's reinstatement provision to Verduzco Ruiz because he took no affirmative step to seek immigration relief before IIRIRA went into effect, and (2) assuming a due process violation occurred, he is not entitled to relief because he has failed to present a plausible scenario in which the outcome would have been different had his attorney been present for reinstatement proceedings.

**PETITION DENIED.**[3]

---

[3] The stay of removal (Dkt. No. 11) will remain in place until the mandate issues.